93 So.2d 1

Lelia Murray DAY

v.

DEPARTMENT OF INSTITUTIONS.

No. 42825.

June 29, 1956.

Dissenting Opinion Viosca, J., Aug. 15, 1956.

On Rehearing Jan. 21, 1957.

Cadwallader & Dameron, Baton Rouge, Mary Bird Perkins, Baton Rouge, of counsel, for relator and appellant.

Sargent Pitcher, Baton Rouge, for appellee.

HAWTHORNE, Justice.

Alleging that the State Department of Institutions has unjustifiably terminated her employment as a clerk, Mrs. Lelia Murray Day seeks in these proceedings before

the State Civil Service Commission to be reinstated in her former position with full back salary to the date of reinstatement.

This is the second time this case has been before this court. Our prior decision was on Mrs. Day's appeal from a judgment of the Civil Service Commission maintaining an exception of no right of action filed by the Department of Institutions on the ground that she had permitted more than 30 days to elapse between the time when she had been deprived of her rights or otherwise discriminated against and the date of her demand for a hearing before the Civil Service Commission. See Day v. Department of Institutions, 228 La. 105, 81 So.2d 826.[1] The Department of Institutions in filing its exception took the position that Mrs. Day had orally resigned on September 1, 1953, and that she did not apply to the Civil Service Commission for a hearing until February 8, 1954. The Civil Service Commission maintained this exception, finding that Mrs. Day had allowed more than 30 days to elapse between her oral resignation on September 1 and her appeal to the Commission on February 8, and that consequently her appeal was not timely under Rule 13.2 of the Commission. On appeal this court overruled the exception and remanded the case to the Civil Service Commission for further proceedings according to law. On the re-

mand the Civil Service Commission tried Mrs. Day's case on the merits and denied the relief sought. She has again appealed to this court.

In the course of the prior opinion we set forth the contention of the appointing authority and announced the law applicable as follows:

"* * * The contention of the appointing authority that Mrs. Day orally resigned effective September 1, 1953, and the conclusion reached by the Civil Service Commission that Mrs. Day knew at the latest in November, 1953, that the Department of Institutions had treated her as having resigned and had removed her from the payroll as of September 1, 1953, could not stand the test prescribed in the Rules adopted by the Commission itself. *In order to make effective the removal of the subject employee from the payroll, the fact of the acceptance of her alleged oral resignation and of her removal from the payroll should have been made known by a statement in writing to her and to the Director in advance of such action."* (Italics ours.) See Day v. Department of Institutions, supra, at 228 La. 112, 81 So.2d 828.

In this former opinion we pointed out that the only written notice received by the appellant was a letter from Dr. Grant

1. The writer of this opinion only concurred in the decree in that case, which announced the rule of law controlling here. See 228 La. 113, 81 So.2d 828.

dated January 27, 1954. As Mrs. Day's appeal to the Civil Service Commission was filed on February 8, 1954, it was taken less than 30 days from the date of this letter and was therefore timely under Rule 13.2 of the Commission. See Day v. Department of Institutions, supra.

Pursuant to Article 14, Section 15(O) (1), of the Louisiana Constitution, " * * The decision of the appropriate Civil Service Commission *shall be final on the facts,* but an appeal shall be granted to the Supreme Court of Louisiana on any question of law if application to the Commission is made within thirty (30) days after the Commission's decision becomes final". (Italics ours.)

In the instant case the Civil Service Commission has found as a fact—this finding of fact is final, and we do not have jurisdiction to review it—that Mrs. Day orally resigned from her position on September 1, 1953; that written notice of her removal from the payroll because of her oral resignation was given to her by the letter of Dr. Grant dated January 27, 1954;[2] and that the director of the department had likewise received written notice of Mrs. Day's removal from the payroll by reason of her resignation of September 1, 1953. The Civil Service Commission then said: "Thus, all the requirements of the Rules as construed by the Supreme Court [in the first

Day case] have been met." The Commission consequently refused to reinstate Mrs. Day, finding that she had been effectively removed from the payroll as of January 27, 1954.

We find no error of law in this ruling.

As heretofore pointed out, the Commission found as a fact that Mrs. Day orally resigned on September 1, 1953. This fact standing alone would not have the effect, under our previous decision in this case, of removing her from the payroll. We said in our previous decision that before her removal from the payroll could become effective, the acceptance of her oral resignation and her removal from the payroll would have to be made known by a statement in writing to her and to the director in advance of such action. The Commission found that appellant orally resigned on September 1, and that her removal from the payroll under the decision in the above case was made known to her in writing on January 27. The question then presented is whether she is entitled to pay for this period of time.

According to the findings of the Commission, Mrs. Day obtained a leave of absence without pay beginning August 19 or 20, 1953, and since that time has never returned to her classified position in, or done a day's work for, the Department of Institu-

---

2. The record also shows that a copy of this letter was mailed to the director of the Department of State Civil Service.

tions. According to the Commission, the evidence failed to establish that Mrs. Day ever terminated her leave of absence without pay. Consequently it follows that on January 27, 1954, when her oral resignation became effective and she was legally removed from the payroll, she was still on leave of absence without pay.

We are therefore of the opinion that the decision of the Commission refusing to reinstate Mrs. Day and denying to her any back salary is correct and should be affirmed.

For the reasons assigned the decision of the Civil Service Commission is affirmed.

FOURNET, C. J., dissents and assigns written reasons.

PONDER, J., dissents.

VIOSCA, J. ad hoc, dissents in part being of the view that Mrs. Day is entitled to compensation for the period of time between the date she returned to work and the date her removal was made known to her by a statement in writing.

FOURNET, Chief Justice (dissenting).

This case is before us on appeal by Mrs. Lelia Murray Day from an adverse ruling of the Civil Service Commission for the second time. When the case was previously before us we reversed the ruling of the State Civil Service Commission maintaining the Department of Institutions' exception of no right of action and dismissing Mrs. Day's appeal to the Commission on the ground that it had not been filed within 30 days, as required by the Rules adopted by the Commission in accordance with Act 18 of 1952, incorporated in the Constitution of 1921 under Article 14 thereof. 228 La. 105, 81 So.2d 826.

According to the findings of fact of the Commission in that case, "On the effective date of the Civil Service Amendment [June 30, 1953], Mrs. Lelia Murray Day was an elected member of the East Baton Rouge Parish Democratic Executive Committee,[1] and also an employee, on leave, of the Department of Institutions. On or about August 28, 1953, while Mrs. Day was still on leave, the Department's Personnel Officer advised her, by telephone, that she could not legally occupy both positions. The Personnel Officer testified that as a result of this conversation, Mrs. Day verbally resigned from the Department. Mrs. Day testified that she had advised the Personnel Officer that she had resigned from

1. On this point Mrs. Day testified that she had resigned before the effective date by telephoning the Chairman of the East Baton Rouge Executive Committee; the testimony of Mr. Doiron, Chairman of that Committee, sought to be introduced to corroborate her statement, was excluded as being irrelevant on this trial of exceptions. See footnote No. 3 of the original opinion.

the Parish Committee, and that she had never resigned from the Department.

"On September 1, 1953, the Department officially notified the Civil Service Department that Mrs. Day had resigned, and since that date Mrs. Day has not been on the payroll of the Department of Institutions. Mrs. Day subsequently met with the Director and the Personnel Officer of the Department and protested that she had not resigned from the Department. At this meeting, she was advised that she was no longer on the Department's payroll. The date of this meeting was fixed by Mrs. Day as September 23, 1953, the other witnesses fixed the date as the latter part of November, 1953. In either event, the evidence is clear that as of the date of this meeting, Mrs. Day knew that she had been removed from the payroll of the Department of Institutions.

"Subsequently, after a conference in January between Mrs. Day, her attorney, the Director and Personnel Officer of the Department of Institutions and members of the staff of the Civil Service Department, Mrs. Day, on February 8, 1954, filed her appeal."

And under its conclusions of law, based upon Rule 13.2, making it the mandatory duty of the Commission to grant a hearing to a person who alleges he or she has been deprived of his or her rights or otherwise been discriminated against within 30 days of any such action, the Commission, in maintaining the exception of no right of action and dismissing the appeal, reasoned: "Conceding that Mrs. Day did not actually resign; she was deprived of her rights and discriminated against when the Department treated her as having resigned and removed her from the payroll on September 1, 1953. Even if the 30 days within which Mrs. Day could appeal did not commence to run until she was aware of this action, and conceding that she was not aware of it until late November of 1953, nevertheless the 30 days had long since passed when this appeal was filed, on February 8, 1954."

In reversing this ruling we unequivocally held that under Rule XII of the Civil Service Commission, adopted pursuant to the authority vested in it by the Constitution, *"In order to make effective the removal of the subject employee from the payroll,* the fact of the acceptance of her alleged oral resignation and of her removal from the payroll should have been made known by a statement in writing to her and to the Director in advance of such action," pointing out that "The contention of the appointing authority that Mrs. Day orally resigned effective September 1, 1953, and the conclusion reached by the Civil Service Commission that Mrs. Day knew at the latest in November, 1953, that the Department of Institutions had treated her as having resigned and had removed her

from the payroll as of September 1, 1953, could not stand the test prescribed in the Rules adopted by the Commission itself." [228 La. 105, 81 So.2d 828.] (Emphasis added.)

From the foregoing it is clear that when this case was "remanded to the Commission for further proceedings according to law and not inconsistent with the views herein expressed," and on remand was submitted to it on the record as made up, *the Commission was bound by this ruling of law.* And, applying this law to the facts of the case as found by the Commission, namely, that Mrs. Day on or about August 28 had *orally resigned her position effective September 1, 1953,* and that the Civil Service Department was formally notified thereof by her employer, the Department of Institutions, it is clear that Mrs. Day was never effectively removed from the payroll, since the fact of the acceptance of her alleged oral resignation and of her removal from the payroll was not "made known by a statement in writing to her and to the Director *in advance of such action."* Boucher v. Division of Employment Security, 226 La. 227, 75 So.2d 343.

In the Boucher case, as pointed out in the original opinion, "this Court held that a person who had acquired permanent civil service status could not be demoted, dis-missed or discriminated against by the appointing authority without furnishing the employee and the Director, *in advance of such action,* a statement in writing giving explicit and detailed reasons therefor, and notifying the employee of his right to appeal to the Louisiana Civil Service Commission; and *failure to give such notice rendered the employer's action illegal."* (Emphasis supplied.)

The Commission's ruling to the contrary on the remand of the case of necessity was not consistent with this holding; in fact, was in direct violation thereof when it concluded "all of the requirements of the Rules as considered by the Supreme Court have been met" when "The Director of the Department of State Civil Service received written notice on September 1, 1953, of Mrs. Day's removal from the payroll by reason of her resignation, and the letter of January 27, 1954, is a statement in writing to Mrs. Day of her removal from the payroll by acceptance of her resignation. * * * The reasons supporting the remand decree of the Supreme Court indicate that such written statement could operate as an effective removal of Mrs. Day from the payroll only from its date, leading to the conclusion that Mrs. Day became effectively removed from the payroll as of January 27, 1954." The letter of January 27, 1954, [2] cannot by any fiction

2. That letter, addressed to Mrs. Day's attorney by her employer, the Director of the Department of Institutions, stated:

"Your letter of January 21 has just been received suggesting that the best solution to Mrs. Lelia M. Day's problem

of the imagination be construed to be, pursuant to Rule XII, a letter by the appointing authority furnishing Mrs. Day and the Director a statement in writing advising the fact of acceptance of her alleged oral resignation and of her removal from the payroll *in advance of such action*—meaning in advance of the effective date of the resignation and of her removal from the payroll.

Under the particular facts presented there was nothing which the Commission could do on the remand of this case but

> in your judgment is 'to return Mrs. Day to her employment with the Department of Institutions.'
>
> "May I say, Dick, I do not believe that I in the circumstances should engage in a discussion of the merits of Mrs. Day's claims and statements. These, I am confident, will properly be handled by responsible authorities and at that time I shall be happy to present facts not set forth in your letter. It is rather unfortunate in my judgment that Mrs. Day has committed herself to certain statements, and I can assure you that we at this end of the line because of our personal regard for Mrs. Day are going to do our best to see that nothing is said or done that will in the slighest reflect upon her.
>
> "The fact is that Mrs. Day resigned orally from her former position with us in spite of my personal protest and the protest of Mrs. McInnis in exactly the same manner she claims to have resigned from the East Baton Rouge Democratic Executive Committee. For the life of me, Dick, I just can't understand her position that procedure which she claims is valid in one situation is not equally valid in another.
>
> "After her resignation, and under authority vested by the Constitution in the

to rule that Mrs. Day was never legally removed from the payroll of the Department of Institutions; and, under the holding of the cases of State ex rel. Boucher v. Heard, 228 La. 1078, 84 So.2d 827, and State ex rel. Anderson v. Walker, No. 42,-842, 230 La. 816, 89 So.2d 324, she was continued on the payroll of the Department of Institutions in her capacity as Clerk with permanent Civil Service status, and entitled to pay from the date that her leave of absence ended, to continue until legally removed.

> Director of the Department of Institutions to 'transfer duties between positions,' I merged all her former duties with another already existing position. Since that time her former functions have been handled to my complete satisfaction at no additional expense to the State. This being true I cannot in good conscience recreate a job that no longer exists even though I have the warmest personal relationship to the former employee involved.
>
> "May I add, Dick, just this additional word. So far as I am aware Mrs. Day left here on exceedingly happy terms with everyone in our Department. All seemed to speak well of her and she and I, so far as I was aware, enjoyed a very happy personal relationship. Had she been persona non grata with us, or had there been any personal reason to dispense with her services, she could easily have been dropped, or her job abolished, prior to July 1953 before Civil Service went into effect. That such was not done should speak eloquently to you of the fact that there is nothing whatever personal involved in our accepting her voluntary resignation from our Department effective last September 1, 1953."

The Commission, in order to reach the conclusion it did in dismissing Mrs. Day's claim on the merits, in addition to distorting the law of the case as laid down by this Court when previously before us, found as a fact, without factual basis, "The evidence fails to establish that Mrs. Day ever terminated her leave of absence without pay." While, under the express provisions of the Constitution creating Civil Service in this State, in reviewing rulings of the Commission we are without authority to review the facts, our jurisdiction being limited to a review of errors of law alone, I do not think it can be gainsaid that we are not bound by an arbitrary and capricious conclusion of the Commission. Such a ruling is not only inimical to the object and purpose of the Civil Service law of this State, but is contrary and repugnant to a fair and legal administration of that law by those entrusted with the power of enforcing its provisions. Of necessity such an abuse is illegal and subject to review.

The testimony of Mrs. Day that she reported to the office of Dr. Grant to go to work is not disputed; the only dispute is as to the date she appeared in that office (see footnotes 4 and 5 of the original hearing). She placed the date of the meeting with Dr. Grant on September 23, 1953, while Dr. Grant and the Director of Personnel, Miss McInnis, placed the date at the latter part of November, at which time,

according to Dr. Grant, "She wanted to come back * * * and I said, 'Well, that can't be done because as a separate job that detail does not any longer exist. It has been taken care of within another job,'" and assured her "we would use every influence we could to get her a job in another department doing the same thing she had done for us." And unless the Commission could find some evidence in the record on which to base a different conclusion (which I have not been able to find), it would appear that the testimony is uncontroverted that her leave of absence without pay was terminated not later than some time during the latter part of November, 1953; but if it can be said I am wrong about this, it cannot be denied that Mrs. Day's letter of January 21, 1954, through her attorney, addressed to her employer, requesting that she be returned to her employment with the Department of Institutions, would be controlling.

I cannot therefore agree with the majority opinion that there was no error in the ruling of the Commission that "all the requirements of the Rules as construed by the Supreme Court * * * have been met," and the Commission's finding that she "had been effectively removed from the payroll as of January 27, 1954."

VIOSCA, Justice ad hoc (dissenting).

I respectfully dissent in part, being of the view that Mrs. Day is entitled to com-

pensation for the period of time between the day she returned to work and the date her removal shall have been made known by statement in writing to her and to the Director in advance of such action.

I concur in the majority opinion, insofar as it holds that our jurisdiction under Article 14, Section 15(O) (1), of the Louisiana Constitution is limited to questions of law and that the decision of the appropriate Civil Service Commission is final on the facts. There is, however, a vast difference between a finding of facts and the drawing of an erroneous legal conclusion from undisputed facts. As pointed out in the majority opinion, as well as in the dissenting opinion of Chief Justice Fournet, no civil servant may be removed from the payroll, whether it be for cause or because of acceptance of an oral resignation, until after a statement in writing to that effect is made known to the civil servant and to the Director in advance of such action. Boucher v. Division of Employment Security, 227, 75 So.2d 343; Day v. Department of Institutions, 228 La. 112, 81 So. 2d 828; State ex rel. Anderson v. Walker, No. 42,842, 230 La. 816, 89 So.2d 324.

In its finding of facts, the Commission found that Mrs. Day went on leave of absence from her position with the Department of Institutions on or about August 19, 1953, to take care of a sick sister. It further found, as a fact, that Mrs. Day expressed her intention to resign her classi-fied position effective September 1, 1953, and that on that day Mrs. Day was eliminated as an employee of the Department of Institutions. The Commission further found that "by the preponderance of evidence, in November 1953, Mrs. Day called on the Director of the Department of Institutions to solicit reemployment."

All of the foregoing occurred before any notice in writing was ever given to Mrs. Day of the intention of the Department to remove her from the payroll. Therefore, in November 1953, Mrs. Day was still an employee and could not "solicit *reemployment*". The Commission, therefore, drew an erroneous legal conclusion when it stated that she was soliciting *reemployment,* when, as a matter of fact, she was returning to her *existing employment*. This, of course, brought to an end her leave without pay, since no one is presumed to work for nothing.

The fact that Mrs. Day did not perform any work after her illegal removal from the payroll is unimportant, for a civil servant illegally dismissed is entitled to compensation. State ex rel. Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65, and authorities therein cited.

It is my opinion that Mrs. Day is entitled to compensation from the day in November 1953 when she returned to work (erroneously referred to by the Commission as soliciting reemployment) until such time

as she is legally removed by proper delivery to her and to the Director of written notice of her removal from the payroll.

## On Rehearing.

FOURNET, Chief Justice.

This case is before us for the second time from rulings of the State Civil Service Commission dismissing Mrs. Lelia Murray Day's appeal from the action of the Department of Institutions in removing her name from its payroll. At the time the case was first before us, we reversed the order of the State Civil Service Commission dismissing the appeal on the department's exception of no right of action and remanded the case to the Commission "for further proceedings according to law and not inconsistent with the views" expressed in the opinion. See Day v. Department of Institutions, 228 La. 105, 81 So. 2d 826, 828. It necessarily follows that

in order to intelligently discuss and to properly dispose of the present appeal, which was taken from the ruling of the Commission dismissing Mrs. Day's appeal on the merits, it will be necessary for us to review the history of the case in the light of our original holding, which the Commission was specifically directed to follow, and also in the light of the facts as found by the Commission and quoted in the dissenting opinion when this appeal was previously before us. These are that "On the effective date of the Civil Service Amendment (June 30, 1953), Mrs. Lelia Murray Day was an elected member of the East Baton Rouge Parish Democratic Executive Committee, [1] and also an employee, on leave, of the Department of Institutions. On or about August 28, 1953, while Mrs. Day was still on leave the Department's Personnel Officer advised her, by telephone, that she could not legally occupy both positions. [2] The Personnel Officer testified

1. Paragraph (N) (8) of Section 15 of Article XIV of the Constitution of 1921 provides: "No person elected to public office shall, while serving in such elective office, be appointed to or hold any position in the Classified Service of the State or a city." Mrs. Day testified that in view of this provision Dr. Grant, head of the Department of Institutions, advised her in the early part of June she would have to resign as a member of the East Baton Rouge Parish Democratic Executive Committee if she wished to retain her position with the department and that she immediately telephoned her oral resignation to the committee's chairman, Mr. Russell Doiron. It was for this

reason that in filling out form "B" of the Civil Service Commission on June 30, 1953, entitled "Application for Qualifying Examination," which had the effect of blanketing the then employees of the state into the Civil Service system, she answered in the negative the question: "Do you now hold an elective office?" (See Note No. 3 in the majority opinion when the first appeal was before this court, and also Note No. 1 in the dissenting opinion of the author of the instant decision when the former hearing was had in the instant appeal.)

2. It appears that while Mrs. Day was on leave of absence a member of the executive committee, on August 22 or 23,

that as a result of this conversation, Mrs. Day verbally resigned from the Department. [3] Mrs. Day testified that she had advised the Personnel Officer that she had resigned from the Parish Committee, and that she had never resigned from the department.

"On September 1, 1953, the Department officially notified the Civil Service Department that Mrs. Day had resigned, [4] and since that date Mrs. Day had not been on the payroll of the Department of Institu-

tions. Mrs. Day subsequently met with the Director and the Personnel Officer of the Department. At this meeting she was advised that she was no longer on the Department's payroll. The date of this meeting was fixed by Mrs. Day as September 23, 1953, the other witnesses fixed the date as the latter part of November, 1953. [5] In either event, the evidence is clear that as of the date of this meeting, Mrs. Day knew that she had been removed from the payroll of the Department of Institutions.

· wrote to the Director of Personnel of the Civil Service Commission stating Mrs. Day was then a member of that committee. In reply to this letter the director, by a communication dated August 25 and again the next day, stated the department was endeavoring to contact Mrs. Day to ascertain if she had in fact resigned from the committee.

3. Although the personnel officer of the department testified that in conformity with the provisions of paragraph 8 of Rule XII of the Civil Service Commission she requested a letter of resignation from Mrs. Day, it is obvious this officer failed to comply with the provisions of the rule since she neither attached to the form showing change of status of the employe the letter of resignation nor explained the reason why such a letter was not furnished. This rule provides: "Voluntary Resignations. Whenever the services of a permanent employee are terminated by voluntary resignation, the appointing authority shall request the employee to submit a letter of resignation. A copy of this letter shall be attached to the personnel status change form. Where for any reason it is impossible or impracticable to secure the letter, the appointing authority shall explain in the personnel status change form the reason why the letter was not

furnished." (This rule was adopted by the commission on May 11, 1953, and was made effective as of July 1, 1953.)

4. Mrs. Day was never given a copy of this change of status form as it affected her and she was never given any notice of the department's action in treating her as having resigned from the service.

5. The testimony of Mrs. Day that she reported to the office of Dr. Grant to go to work is not disputed; the only dispute is as to the date on which she appeared at that office. (See footnotes Nos. 4 and 5 of the decision when this case was first before the court.) She placed the date of this meeting as September 23, 1953, while Dr. Grant and the personnel director placed the date as the latter part of November, at which time, according to Dr. Grant, "*She wanted to come back * * * * and I said, 'Well, that can't be done because as a separate job that detail does not any longer exist. It has been taken care of within another job."* and assured her "we would use every influence we could to get her a job in another department doing the same thing she had done for us." It is obvious, therefore, that Mrs. Day's leave of absence was terminated not later than some time during the latter part of November 1953. (The emphasis has been supplied.)

"Subsequently, after a conference in January between Mrs. Day, her attorney, the Director and the Personnel Officer of the Department of Institutions and members of the Staff of the Civil Service Department, Mrs. Day, on February 8, 1954, filed her appeal."

Under these facts the Commission, whose mandatory duty it is to grant a hearing within 30 days of the filing of an appeal under its rule No. 13.2, [6] maintained the exception of no right of action filed by the Department of Institutions and dismissed the appeal. As the basis for such a ruling the commission reasoned: "Conceding that Mrs. Day did not actually resign; she was deprived of her rights and discriminated against when the Department treated her as having resigned and removed her from the payroll on September 1, 1953. Even if the 30 days within which Mrs. Day could appeal did not commence to run until she was aware of this action, and conceding that she was not aware of

it until late November of 1953, nevertheless the 30 days had long since passed when this appeal was filed, on February 8, 1954."

In reversing this ruling we held that under rule XII of the Civil Service Commission, adopted pursuant to the authority vested in it by the Constitution, [7] *"In order to make effective the removal of the subject employee from the payroll, the fact of the acceptance of her alleged oral resignation and of her removal from the payroll should have been made known by a statement in writing to her and to the Director in advance of such action."* Of necessity, inasmuch as Mrs. Day was never informed in writing of the acceptance of her oral resignation prior to her removal from the payroll, she was illegally removed. However, being a court of appellate jurisdiction only, we were powerless on that appeal to do any more than we did, that is, to overrule the exception of no right of action filed by the depart-

6. Rule XIII, Section 13.2 provides: "A person who alleges he has been deprived of his rights or otherwise discriminated against as set forth in the foregoing section may, within 30 days of any such action, demand a hearing by notifying the Director in writing that he desires a hearing and outlining in detail his reasons for demanding such hearing. The Commission shall grant the appellant a hearing within sixty (60) calendar days after receipt by the Director of such request, or shall refer the taking of testimony to a Referee within such period of sixty (60) calendar days." (This rule was repealed effective as of April 1, 1955,

and a more comprehensive series of rules governing appeals and hearings enacted.)

7. Section 15 (I) of Article XIV of the Constitution of 1921, as amended, provides: "There is vested in the State Civil Service Commission and in the appropriate City Civil Service Commissions for the several cities respectively the authority and power, after public notice and public hearing, to adopt, amend, repeal and enforce rules which shall have the effect of law, regulating employment, transfers, promotion, *removal*, qualifications, and other personnel matters and transactions * * *." (The emphasis has been supplied.)

ment that had been maintained by the Commission, and to remand the case to that Commission—the forum having the power to decide the case on the merits. (The emphasis has been supplied.)

■■ It is clear this was the law of the case and when the appeal was remanded for further proceedings not inconsistent with these expressed views, the Commission was bound by such ruling of law. Thereunder, Mrs. Day was not only entitled, by reason of her illegal removal, to her back pay from the date of her alleged dismissal or removal, but also to reinstatement. State ex rel. Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65; Boucher v. Division of Employment Security of the Department of Labor, 226 La. 227, 75 So.2d 343.[8]

That all parties were clearly aware this was the law of the case that was to be followed is clearly evidenced by the pleadings themselves, when the case was remanded. In her pleading labeled "Applica-

8. In the Murtagh case the court was called upon to determine, among other things, whether the relator, employed as a permit clerk by the City of New Orleans from 1925, had been blanketed into the city's service as such when the civil service law became effective on January 1, 1943, with the result that he could not thereafter, on September 9, 1946, be removed from that service unless all formalities were complied with, although he was at the time the law became effective actually severed from the city's payroll and engaged in doing outside defense work. The determination of this issue under the civil service law depended upon whether Murtagh had *resigned* from the city's service at the time he left in 1942, or was on an extended leave of absence which did not terminate until August 20, 1945. The lower court concluded he had been blanketed into the civil service *since the city failed to produce his signed resignation* or to offer evidence to overcome the presumption he never intended to resign, but was merely leaving the city's service temporarily during the period of the war, and that he must, therefore, be reinstated with full pay from the date of his illegal dismissal on September 9, 1946. *This court upheld that ruling.*

In the Boucher case several employees of the state civil service were dismissed for cause that was given them in writing at 2:00 p. m. on the effective date of their removal from the state's payroll, despite the fact that Section 2 of Rule XII of the Commission then in effect provided that in every case of *removal* the appointing authority or his authorized agent must furnish the employee and the Director of Personnel in advance of such action with a statement in writing giving the reasons therefor and also notify the employee of his right to appeal to the Civil Service Commission. In reversing and setting aside the ruling of the commission upholding such removal, *this court pointed out that the Director of Personnel was not furnished with written notice of the contemplated action as required under this rule,* although the appointing authority had discussed the matter with him; *consequently, that the removal of employees was improper and illegal.* In other words, that under the civil service rules knowledge of the Director of Personnel of removal of an employee from the public service was not sufficient, and there must be actual written notice. We accordingly voided the ruling of the commission approving the dismissal from service of these employees, as well as their removal from the payroll.

tion for Enforcement of Judgment of the Supreme Court of Louisiana," Mrs. Day, through her attorney, points out the opinion originally handed down required that "a written notice had to be given by the Department of Institutions in order to remove Mrs. Lelia Murray Day, a civil service employee, from the payroll and that the acceptance of the alleged oral resignation of Mrs. Lelia Murray Day and of her removal from the payroll must have been made known to her by a statement in writing and to the Director of Personnel in advance of such action."

The department's recognition of our holding to this effect is reflected by the statement in its answer that the principle that notice in writing of termination of services must be given the employee prior to the effective date of such termination *"has now been extended by this Honorable Court to cover a situation such as exists here, to-wit: that where an employee voluntarily resigns from a position, that the notice of the acceptance of the resignation must be in writing."* Answering further, however, it sought under the provisions of Paragraph (*O*) (3) of Section 15 of Article XIV of the Constitution of 1921,[9] to be relieved of the necessity of paying to Mrs. Day the salary allegedly withheld by the state in good faith during the period she did not work, inasmuch as the department believed its action was taken within the framework of the rules governing cases of resignation. (The emphasis has been supplied.)

The commission, quoting in full the law of the case as above set out [10] and taking full cognizance thereof, under compulsion entertained the appeal as having been timely filed. However, holding that Mrs. Day had never in fact terminated her leave of absence without pay and had only sought re-employment, the commission, considering Dr. Grant's letter dated January 27, 1954,[11] as written acceptance by the department of Mrs. Day's resignation, dismissed her appeal.

The fallacy of the reasoning of the commission lies in the fact that Mrs. Day could not have sought re-employment since she had never been legally removed from the

---

9. This provision reads: "If any Commission after any hearing orders a dismissed or suspended employee reinstated, it may reinstate such employee *under such conditions as it deems proper and may order full pay for lost time.*" (The emphasis has been supplied.)

10. "In order to make effective the removal of the subject employee from the payroll, the fact of the acceptance of her alleged oral resignation and of her removal from the payroll should have been made known by a statement in writing to her and to the Director in advance of such action."

11. This letter is quoted in full in footnote No. 2 of the dissenting opinion when the case was originally heard on this appeal. A mere reading of this letter clearly discloses it was never intended as an acceptance of Mrs. Day's resignation.

payroll·of the Department of Institutions. Nor is it disputed that·Mrs. Day did in fact return to work. As pointed out above in footnote No. 5, the only dispute was as to the day on which she returned, her testimony being this was on September 23, 1953, while that of the department officials was that she returned the latter part of November 1953. Under these circumstances, inasmuch as Mrs. Day was employed on a monthly basis, it must be held without further evidence, that she reported to work the latter part of November, intending thereby to give notice that she would terminate her leave of absence without pay and return to the service of the state beginning with the calendar month of December 1953. Consequently, she is entitled to pay from that date until she is in fact actually and legally removed from the payroll of the Department of Institutions.

For the reasons assigned, the ruling of the Civil Service Commission dismissing the appeal of the plaintiff, and the action of the Department of Institutions in improperly and illegally removing her from the roll without full compliance with the provisions of Rule XII of the Civil Service Commission, are annulled and set aside, and it is now ordered, adjudged and decreed that Mrs. Lelia Murray Day. is hereby reinstated on the payroll of the Department of Institutions effective on December 1, 1953, until such time as she is legally ·removed therefrom, with full pay.

HAWTHORNE, J., dissents, adhering to the views expressed in the original opinion.

McCALEB, J., dissents with written reasons.

McCALEB, Justice (dissenting).

If the statement contained in the first majority opinion, reported in 228 La. 105, 81 So.2d 826, 828 that "In order to make effective the removal of the subject employee· from the payroll, the fact of the acceptance of her alleged oral resignation and of her removal from the payroll should have been made known by a statement in writing to her and to the Director in advance of such action" is the law of this case, the ruling of the majority on this rehearing would be correct forasmuch as Mrs. Day was never informed in writing of the acceptance of her oral resignation *prior to her removal from the payroll.* But I respectfully suggest this is not the law of the case.

My view, which has heretofore been· expressed in a dissenting opinion from the refusal of a rehearing on the first occasion this case was before us (see 228 La. 115–116, 81 So.2d 829), is that the law neither requires nor envisions that an employee in Civil Service, who has voluntarily resigned his position, be given notice of any sort of the acceptance of the resignation and of his removal from the payroll. And I further pointed out in that dissent that the

statement to the contrary contained in the prevailing opinion should be corrected by a per curiam or that a rehearing be granted.

I cannot regard that expression of opinion (which the Court refused to correct by per curiam) as the law of this case as it was unnecessary to the issue presented to the Court on the first hearing. The case on that hearing came to us from a judgment of the Commission sustaining an exception of no right of action filed by the Department on the ground that, since Mrs. Day had allowed more than 30 days to elapse between the time of the alleged deprivation of her rights (removal from the payroll) and the date of her demand for a hearing, her application was too late under Rule 13.2 of the Commission. Since Mrs. Day was claiming that she had been unlawfully removed from the payroll and since the Constitution, Article 14, Section 15 (N) (1), requires that no permanent Civil Service employee shall be demoted, dismissed or discriminated against except for cause expressed in writing, the Court correctly found that Mrs. Day's appeal to the Civil Service Commission was not too late as more than 30 days had not elapsed from the date on which she had received, through her attorney, written notification of her separation from the Service some several months prior thereto. But there was no occasion for the Court to decide that a resignation of an employee must be accepted in writing and the ruling to that effect was, in my opinion, purely obiter dicta which was not binding on the Civil Service Commission in its determination of the case on its merits. See Acosta v. Nunez, 203 La. 275, 13 So.2d 860. Upon trial of the merits of the case, the real issue for decision was whether Mrs. Day had been unlawfully removed from office, as she contended or whether she voluntarily resigned, as asserted by the Department of Institutions. This issue was purely one of fact which the Civil Service Commission determined adversely to Mrs. Day and its judgment on that question was not subject to review by this Court, as we found in our original opinion on this appeal.

Since there is no requirement, either in the Civil Service law or in the rules adopted by the Civil Service Commission [1] that a

---

1. In this connection, I take cognizance of the provisions of paragraph 8 of Rule XII of the Civil Service Commission quoted in full in footnote No. 3 of the majority opinion on this rehearing. This rule, as I read it, is inapplicable to this case. Indeed, counsel for Mrs. Day have not claimed that it has any pertinence here or that Mrs. Day should be reinstated because it has not been observed by the Department of Institutions. The rule requires that the appointing authority request the employee to submit a letter of resignation; that a copy thereof be attached to the personnel change form and that, if such a letter is not secured from the resigning employee, the appointing authority shall explain in the status change form the reason why it is not furnished. Obviously, the rule was enacted in the interest of the administration of the Civil Service law; its violation, in my opinion, has no effect on the legality of a voluntary resignation.

voluntary resignation by a permanent employee be accepted in writing in order for it to become effective and since the Civil Service Commission has resolved the disputed issue of fact as to Mrs. Day's resignation in favor of the Department of Institutions, I think its judgment should be affirmed.