859 So.2d 696 (2003)
Harvey STERN
v.
NEW ORLEANS CITY PLANNING COMMISSION.
No. 2003-CA-0817.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 2003.
*697 Thomas W. Milliner, New Orleans, LA, Counsel for Plaintiff/Appellant.
Sherry Landry, Acting City Attorney, Franz L. Zibilich, Chief Deputy City Attorney, Joseph V. DiRosa, Jr., Deputy City Attorney, New Orleans, LA, Counsel for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY, Judge EDWIN A. LOMBARD).
PATRICIA RIVET MURRAY, Judge.
This is an appeal from a decision by the Civil Service Commission of the City of New Orleans (the "Commission") dismissing the appeal of Harvey Stern, a permanent classified civil service employee. The Commission's reasoning was that Mr. Stern's voluntary resignation was accepted and final before he attempted to rescind it. For that reason, the Commission held that he lacked a right of appeal. We agree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND
From February 1981 to October 2001, Mr. Stern was employed as a civil service employee with the City of New Orleans. In June 1995, he was promoted to his current position as principal analyst in the Strategic Planning Division of the City Planning Commission ("CPC"). In 2001, he applied for a promotion to the position as principal planner. On October 2, 2001, he returned from a three-week, scheduled vacation. On that date, he learned that the principal planner position had been filled and that he had been transferred from his position in the CPC's Strategic Planning Division to a position in its Land Use Division. His files in Strategic Planning were reassigned, and he was assigned one file in the Land Use Division.
On October 3, 2001, Mr. Stern submitted a letter of resignation to Collette Creppell, the CPC's Executive Director, which read: "I am resigning effective 5PM Thursday October 18, 2001." Shortly thereafter, he mentioned to another department employee that he was considering withdrawing his tender of resignation. In a letter to Ms. Creppell dated Friday, October 12, 2001, he expressed his intent to rescind his resignation, stating: "I am writing to rescind my October 3rd letter of resignation that was to have been effective October 18th, and am asking that all paperwork relative to my termination be halted." He further stated in the letter that his resignation was prompted by his disappointment over not being appointed principal planner, as well as by "the arbitrary and unfair process though which this appointment was filled." Finally, he ended the letter with a request for a one-year unpaid leave of absence.
According to Ms. Creppel, she did not receive the letter until Monday, October 15, 2001. On that same date, she responded in writing, informing Mr. Stern that she had just received his letter dated October 12, 2001 and that his earlier resignation had "already been received and accepted." On the next day, October 16, 2001, Ms. Creppell initiated Mr. Stern's separation paperwork by completing two forms: an "EXIT INTERVIEWTERMINATION OF EMPLOYMENT", listing the reason for Mr. Stern's termination of employment as "RESIGNATION NO REASON KNOWN"; and a "SEPARATION NOTICE *698 ALLEGING DISQUALIFICATION", listing the reason for leaving as "Voluntary Leaving (Quit)." Neither of these forms were ever signed by Mr. Stern.
On October 16, 2001, Mr. Stern wrote another letter to Ms. Creppell. Expressing his belief that Ms. Creppell was incorrect in suggesting he had no choice but to resign, he articulated the following reasons in support of his position:
 My letter rescinding my resignation was submitted prior to the intended resignation date of 5PM, October 18, 2001.
 At no time prior to the letter of rescission did I receive notice by either you or by the Commission that my resignation had been accepted.
 On the morning of October 15th, I was told by your secretary that no paperwork had commenced relating to this matter.
 Substantiating this is my verification with the Finance Department that they received no documents related to this matter, and that therefore as of today I am an employee in good standing.
On October 17, 2001, Ms. Creppell responded by letter, stating that "[y]ou requested and received acceptance of your resignation from the office."
On October 18, 2001, Mr. Stern responded by writing another letter, stating:
Resigning or not resigning is my call as a permanent civil service employee.
* * *
Yet in the face of my stated desire to maintain employment, you "after the fact" filled out exit forms to process a resignation. The "Separation Notice" (signed by you on October 16) wrongly stated that I was voluntarily resigning....[The forms] have not been submitted since I did not sign them. Because of this, I have now learned that it is your intention to directly authorize the city Payroll Section to process my termination without these forms.
* * *
I consider these actions highly improper, and in effect an attempted "forced resignation."
On October 19, 2001, Mr. Stern reported for work and was told by Ms. Creppell that he could not remain in the office and that he would be forcibly removed if he did not leave. On October 22, 2001, Mr. Stern again reported for work, but was barred from entry at the sign in desk by City Hall personnel. At that time, his identification card was confiscated, and he was denied a visitor's pass.
On October 19, 2001, Mr. Stern requested that the Civil Service Department take no action on any personnel forms originating from the CPC that would remove him either from his position as a civil service employee or from the payroll. He explained that Ms. Creppell was attempting to impose a "forced resignation" on him. On November 12, 2001, Mr. Stern requested an appeal to the Commission of his "forced resignation."
Mr. Stern filed an appeal to the Commission on January 16, 2002, regarding his dismissal and regarding the "[f]ailure to ratify dismissal/force resignation within sixty days as required by Section 4-108 of the Home Rule Charter, City of New Orleans." On January 15, 2002, at its semi-monthly meeting, the CPC had declined to ratify the actions of Ms. Creppell regarding the resignation of Mr. Stern, as required by the City's Home Rule Charter relative to all personnel decisions by the *699 CPC's executive director.[1] The Commission assigned the matter to a hearing examiner, who held a hearing on May 30, 2002. At that hearing, the CPC argued that Ms. Creppell acknowledged and accepted Mr. Stern's resignation by conduct. Mr. Stern countered that the CPC was compelled to rescind his resignation upon his request because the CPC had not acknowledged or accepted his resignation in writing, and he rescinded his resignation prior to its effective date.
On July 24, 2002, the Commission rendered it decision, denying Mr. Stern's appeal. The Commission found that because Mr. Stern's voluntary resignation was accepted and final before he attempted to rescind it, he lacked a right of appeal. The Commission reasoned that the appointing authority acknowledged Mr. Stern's decision to resign by conduct. Ms. Creppell ordered the staff to gather the files for which Mr. Stern had been responsible, and Mr. Stern's new supervisor in the Land Use Division refrained from assigning him new files upon his transfer into that division. The Commission noted that Ms. Creppell acknowledged she had the authority to accept Mr. Stern's revocation of his resignation and that she also had the authority to disallow Mr. Stern's request for a one-year leave of absence and order him back to work. She rejected both options. The Commission concluded that:
The Appellant [Mr. Stern] contends that the resignation was not accepted prior to his attempted revocation. He contends that the acceptance must be in writing and approved by the City Planning Commission before it becomes final. Our rules do not anticipate this situation. We have no requirement that voluntary resignations must be acknowledged in writing. In the instant case, the Appointing Authority accepted the Appellant's resignation by conduct. Once she received the Appellant's resignation, she informed her subordinates to take the appropriate action. The appellant cooperated in the transition, until he had a change of heart.
We conclude that the Appellant's voluntary resignation was accepted and final prior to his attempted revocation. As such, he has no right of appeal.
One of the three Commission members dissenting, expressing the opinion that since generally personnel matters are not handled expeditiously, it was "harsh treatment" for the appointing authority to take advantage of Mr. Stern's initial decision and to fail to recognize his prompt change of heart regarding resigning.[2] From that decision, Mr. Stern appeals.

STANDARD OF REVIEW
In Banks v. New Orleans Police Dept., XXXX-XXXX, p. 3 (La. 4 Cir. 9/25/02), 829 So.2d 511, 513-14, writ denied, 2002-2620 (La.12/13/02), 831 So.2d 990, this court articulated the standard of review in civil service cases. First, we noted that the review by appellate courts of the findings of fact in a civil service case is governed by the manifest error or clearly erroneous standard. Second, we noted that when the Commission's decisions involve jurisdiction, procedure, and interpretation of laws and regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, we noted that on legal issues, appellate courts give *700 no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. Third, we noted that a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review. Finally, we noted that a legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial.

DISCUSSION
The issue presented in this appeal is whether the Commission correctly concluded that Mr. Stern's resignation was voluntary and that he therefore lacked a right to appeal. In Banks, we noted that "the question of whether an employee has the right to appeal is analogous to the question of whether a plaintiff has a cause of action." Banks, XXXX-XXXX at p. 3, 829 So.2d at 514. An employee has no right to appeal when the employee voluntary resigns. Palmisano v. Department of Fleet Management, Parish of Jefferson, 97-745, p. 5 (La.App. 5 Cir. 12/10/97), 704 So.2d 862, 864. However, an employee has a right to appeal when the employee is forced to resign or involuntarily resigns. The reason an appeal lies in the latter context is to preclude the characterization of disciplinary action as a "resignation" to subvert an employee's right to appeal provided for by La. Const. Art 10, § 8. Peterson v. Department of Streets, 369 So.2d 235, 237 (La.App. 4th Cir.1979).
In this case, Mr. Stern's right to appeal is contingent upon whether his resignation was voluntary, as the CPC contends and the Commission found, or involuntary (forced), as he contends. The Commission's rules do not address the particular facts of the instant case; its rules do not address the procedure to be followed when a classified employee tenders his prospective resignation and attempts to withdraw the same prior to the effective date. Given the silence of the Commission's rules on the manner of acceptance of a voluntary resignation,[3] the CPC suggests that we *701 look to the Civil Code articles on offer and acceptance. Particularly, it cites La. C.C. art.1927, which provides:
A contract is formed by the consent of the parties established through offer and acceptance.
Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.
Applying that rule, the CPC contends that the Commission correctly concluded it accepted Mr. Stern's voluntary resignation by its actions before his attempted revocation. Particularly, the CPC cites the fact that following Mr. Stern's tender of resignation, Ms. Creppell notified at least two of the CPC members of his resignation. It also cites her testimony that she handled his resignation in the same manner that she had handled other recent resignations. The CPC also stresses the fact that Mr. Stern participated in the preparations that were commenced by the CPC for his resignation; he met with his prior supervisor as well as his new supervisor in the Land Use Division. It follows, the CPC stresses, that he was aware of the fact that the CPC had accepted his resignation. Given these facts, the CPC argues that the Commission did not act arbitrarily or capriciously and did not commit manifest error in concluding that Mr. Stern's resignation was accepted before he attempted to revoke it.
Conversely, citing Day v. Department of Institutions, 231 La. 775, 93 So.2d 1 (1956), Mr. Stern contends that the CPC was required to accept his resignation in writing. In further support for his position, he cites cases from other jurisdictions for the proposition that a public employee may revoke a tender of resignation before its effective date provided there has been no formal acceptance or acts in reliance upon such resignation by the public employer.[4] Particularly, he quotes the following language from Davis v. Marion County Engineer, 60 Ohio St.3d 53, 573 N.E.2d 51, 53-54 (1991): "[a]cceptance of a resignation should be in writing and should encompass some type of affirmative act *702 that clearly indicates that the tender of resignation is accepted by someone empowered by the public employee to do so." Id. Based on these principles, he emphasizes the fact that the CPC failed to provide him with a written acceptance of his resignation until after he withdrew it.
Mr. Stern further contends that the CPC did not act in reliance on his resignation before he attempted to withdraw it. He stresses that the CPC had not hired anyone to fill his position; indeed, it had not begun the process for hiring a replacement. He also stresses that he had been transferred to another division the day before he tendered his resignation and that all his files were reassigned to coworkers for that reason, not because of his resignation. He also notes that he had not yet taken up a caseload in the division to which he had been transferred. Given these facts, he submits that the CPC took no steps in reliance on his tender of resignation before he rescinded it.
Because the CPC neither formally accepted his resignation in writing nor took any steps in reliance on his tender of resignation, Mr. Stern contends that he had the right to rescind it. Continuing, he contends that the refusal of the CPC's executive director, Ms. Creppell, to allow him to rescind it was improper and tantamount to disciplinary action. Thus, he claims this is an involuntary or forced resignation case, and the Commission erred in finding he did not have a right of appeal.
The Commission correctly concluded that a formal acceptance in writing was not necessary. Although the Louisiana Supreme Court in Day held under the facts before it that a written acceptance was required, Day is distinguishable in that it involved an oral resignation whereas Mr. Stern's resignation was in writing. See Pugh v. Department of Culture, Recreation, and Tourism, Sabine River Authority, 597 So.2d 38, 41, n. 2 (La.App. 1 Cir.1992)(distinguishing Day on that basis and noting the lack of a notice issue when the employee resigns in writing). The fact the CPC failed to accept in writing was thus not controlling.
The Commission also concluded that Ms. Creppell's conduct constituted an acceptance of Stern's tender before he attempted to revoke it. As discussed above, the CPC argues this finding was not manifestly erroneous. We interpret Mr. Stern's counterargument to be that Ms. Creppell's conduct was insufficient to amount to an acceptance.[5] The question of what conduct constitutes an acceptance clearly turns on the particular facts of the particular case. Given the factual nature of this determination, we find it is governed by the manifest error standard.
*703 In this particular case, the Commission found that the CPC's conduct was sufficient to constitute an acceptance, stating the following reasons:
Although not formally accepting in writing, the Appointing Authority acknowledged the Appellant's decision to resign by conduct. Dubravka Gilic is a planning administrator in charge of the Comprehensive Planning Section. She testified that Ms. Creppell informed her of the Appellant's resignation. As a consequence, she was directed to meet with the Appellant to locate and gather those files and documents for which he had responsibility. She testified that she met with the Appellant on several occasions, and that he was cooperative. She also testified that at a certain point in time the Appellant informed her that he was having second thoughts about resigning. Mindy Parnes is a planning administrator. She also supervised the Appellant for a brief period. She testified that after his transfer to her section he was assigned a zoning case. However, because he was leaving, she reassigned the project to someone else. Ms. Creppell testified that she accepted the resignation and began making plans
Although we find the CPC's actions taken in reliance on the resignation to be minimal, we cannot say that the Commission was manifestly erroneous in finding the actions taken were sufficient to constitute an acceptance. Once there was an acceptance of the resignation, Ms. Creppel, on the CPC's behalf, was not bound to accept Mr. Stern's rescission. See Palmisano v. Dept. of Fleet Management, 97-745 at p. 8 (La.App. 5 Cir. 12/10/97), 704 So.2d 862, 865. We thus find no error in the Commission's decision that Mr. Stern lacked a right to appeal his voluntary resignation.[6]

DECREE
For the foregoing reasons, we affirm the judgment of the Commission.
AFFIRMED.
NOTES
[1] No quorum was present at the semi-monthly meeting of the CPC held on December 18, 2001 at which this matter also was submitted.
[2] The Commission made no express ruling on Mr. Stern's argument that his resignation, even if accepted, was not ratified by the CPC within sixty days as required by the Charter.
[3] The CPC notes that the state civil service rules, particularly, Rule 12.11 on resignations, contain no requirement of written acceptance by the appointing authority of an employee's resignation; Rule 12.11 reads:

(a) Whenever the services of a permanent or probationary employee are terminated by voluntary resignation, the appointing authority shall request that the employee submit a letter of resignation or complete other appropriate agency forms. Where it is impossible to secure the letter or form, the appointing authority shall prepare and maintain a written explanation of the reason(s), if known, and why the letter or form was not obtained.
(b) An employee's resignation, submitted orally or in writing, shall become an accomplished fact upon
1. Its acceptance by his appointing authority, notwithstanding that it may include a prospective effective date; or
2. The occurrence of the effective date and time specified by him in his statement of intention to resign.
(c) The preparation of a personnel status change form for the purpose of reporting an employee's resignation to the Director shall constitute one type of acceptance of his resignation, when signed by the appointing authority.
(d) An employee may not rescind or withdraw his resignation:
1. Subsequent to its acceptance by his appointing authority unless such appointing authority agrees thereto.
2. Subsequent to the effective date and time specified in his statement of intention to resign.
3. Subsequent to the terminal date and hour specified in sub-section (c) hereof.
(e) By mutual agreement between an employee and his appointing authority an accepted resignation may be withdrawn and rescinded at any time prior to the effective date and time specified by the employee in his notice of intention to resign.
(f) When, after receiving notice that his dismissal has been proposed, an employee resigns to avoid dismissal, the Standard Form 1 reporting the resignation shall so indicate and copy thereof shall be furnished to the employee.
[4] See Armistead v. State, 22 Cal.3d 198, 149 Cal.Rptr. 1, 583 P.2d 744, 748 (1978) (holding that, unless valid enactments provide otherwise, employee is entitled to withdraw resignation if done (1) before effective date, (2) before acceptance, and (3) before appointing power acts in reliance on the resignation); Davis v. Marion County Engineer, 60 Ohio St.3d 53, 573 N.E.2d 51, 54 (1991) (holding that (1) public employee may rescind or withdraw tender of resignation prior to effective date, so long as public employer has not formally accepted such tender and (2) acceptance occurs where public employer initiates some type of affirmative action, preferably in writing, that clearly indicates to employee that tender of resignation is accepted); Ex Parte Rhea, 426 So.2d 838, 840 (Ala.1982) (holding that where correspondence operating as effective tender of resignation was not accepted prior to letter withdrawing the same, employee was entitled to be reinstated); Holt v. Personnel Advisory Board of the State of Missouri, 679 S.W.2d 340, 343 (Mo.App. W.D.1984), superceded by statute on other grounds (holding that resignation of merit system employee that was prospective or conditional in character may be withdrawn at any time before it is accepted and removal of such employee from state payroll after withdrawal of resignation was tantamount to involuntary dismissal); Poland v. Glover, 111 F.Supp. 675, 676 (W.D.N.Y.1953) (holding that prospective resignation of public employee could not be accepted, except upon the terms stated therein).
[5] While we acknowledge the jurisprudence holding that a public officer or employee may unilaterally withdraw a prospective resignation at any time prior to its acceptance by the public employer, this jurisprudence provides little, if any, assistance on the factual issue before us of what conduct constitutes an acceptance. See Blackwell v. Mississippi Bd. of Animal Health, 784 So.2d 996, (Miss.App. 2001), citing Haine v. Googe, 248 F.Supp. 349, 351 (S.D.N.Y.1965); Fitzpatrick v. Welch, 96 Idaho 280, 281-82, 527 P.2d 313, 314-15 (1974); Redmon v. McDaniel, 540 S.W.2d 870, 872 (Ky.1976); Rogers v. Carleton, 188 Okla. 470, 110 P.2d 908 (1941); Edwards v. United States, 103 U.S. 471, 26 L.Ed. 314 (1880); Armistead v. State Personnel Board, 22 Cal.3d 198, 149 Cal.Rptr. 1, 583 P.2d 744, 748 (1978). See generally 53 Am.Jur.2d Master and Servant, § 34, at 111 (1970) (contract of employment "is terminated where the employee tenders his resignation and the proffer is accepted by the employer."); 63 Am.Jur.2d Public Officers and Employees § 166, at 730-31 (1972); Annot., Public Officer's Withdrawal of Resignation Made to Be Effective at Future Date, 82 A.L.R.2d 750 (1962); 56 C.J.S. Master and Servant § 33, at 419 (1948) ("a contract of employment may be terminated by agreement of the parties....").
[6] Given our holding affirming the Commission's finding that Mr. Stern had no right to appeal his voluntary resignation, we pretermit the issue he raises regarding the failure to comply with Section 4-108 of the Charter, which provides:

All boards shall have the same powers and duties with respect to their functions as those prescribed in this chapter for officers and department heads, unless otherwise provided by this Charter or applicable state and municipal law. They may delegate such powers and duties to their executive officers, provided that all matters involving appointment, discipline, removal or pay shall become null unless approved by the board within sixty days.
We note, as CPC points out, this Charter provision is related to the provisions of La. Const. art. X, § 8(A), and to disciplinary actions which result in an employee's removal.