TERRI F. LOVE, Judge.
hThe plaintiffs appeal the ruling of the Civil Service Commission, which held that their terminations were due to misconduct as opposed to the participation in alleged protected activity. We find that the Civil Service Commission adjudged the credibility of the witness’ testimony, did not commit manifest error in finding that the *926 plaintiffs were fired for misconduct, and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Laura East and Susan Brown (“Plaintiffs”) were in the probationary period of their employment as forensic auditors in the Office of Inspector General (“OIG”) and prepared the Assessment of the Transition of the New Orleans Office of Inspector General from Inspector General Robert Cerasoli to Interim Inspector General Leonard Odom on January 30, 2009 (“Assessment”). The Plaintiffs allege that they were scheduled to meet with someone from the Louisiana Legislative Auditor’s office (“LLA”) on September 9, 2009, regarding the Assessment, but were prevented from attending the meeting by Inspector General Ed Quatrevaux (“IG”). On September 10, 2009, the Plaintiffs submitted a memorandum to Hugh Fox, the chief of criminal investigations[1] at the OIG, which stated that they were denied access to the meeting and the LLA by the IG. The 12Plaintiffs’ termination was authorized by the IG on September 23, 2009, after he read the memorandum containing these allegations.
The Plaintiffs appealed their terminations. The OIG filed a motion for summary disposition of appeal because, as probationary employees, the Plaintiffs had no right to appeal unless they were engaged in protected activity. The motion failed and the appeals proceeded before a hearing examiner.
The hearing examiner found that the Plaintiffs “were terminated because of their misconduct” because “the clear implication derived” from the memorandum to Mr. Fox was that the IG “was impeding an independent investigation by the Louisiana Legislative Auditor, which could be interpreted by the reader of the memorandum as obstruction of justice.” The hearing examiner further expounded that “[tjhese are very serious and reckless charges that carry no protection against disciplinary action regardless of any previous protected activity.”
The Plaintiffs appealed their termination to the Civil Service Commission (“CSC”) alleging that their terminations were predicated upon the preparation of the Assessment and not their alleged misconduct. The CSC stated that the Plaintiffs bore the burden of proving that “they engaged in protected activities as defined by Rule II, Section 10.1, and that because of their protected activities the Appointing Authority retaliated by taking disciplinary action.” After analysis, the CSC concluded that “the record supports a conclusion that the Appellants were terminated because of unprotected concerted activities; specifically, their reckless unsupported accusations against their newly appointed superior in the September 9, 2010 memorandum.” In conclusion, the CSC held that:
The Appellants creation and submission of the ^assessment was protected. However, they were not terminated because of their protected activity. The Appellants were terminated because of misconduct. The clear implication derived from the September 10, 2009 memorandum to the Chief of Criminal Investigations was that Mr. Quatrevaux was impeding an independent investigation by the Louisiana Legislative Auditor, which could be interpreted by the reader of the memorandum as obstruction of justice. These are very serious and reckless charges that carry no protection against disciplinary action regardless of any previous protected activity.
*927 The CSC dismissed the Plaintiffs appeals. The Plaintiffs appeals to this Court followed.

STANDARD OF REVIEW

Appellate courts review CSC factual findings using the “manifest error or clearly erroneous standard.” Stern v. New Orleans City Planning Comm’n, 03-0817, p. 6 (La.App. 4 Cir. 9/17/03), 859 So.2d 696, 699. Legal issues are reviewed giving no special weight to the trial courts findings. Stern, 03-0817, p. 6, 859 So.2d at 700. Mixed questions of law and fact are reviewed with great deference and appellate courts utilize the manifest error standard of review. Id. We must ascertain whether the factfinder’s conclusions were reasonable with deference to the factfinder’s evaluation of the credibility of the witnesses and resolutions of conflicting testimony. Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
“The burden of proof on appeal, as to the facts, shall be on the appointing authority, except in cases of alleged discrimination, where the burden shall be on the appellant.” Goins v. Dep’t of Police, 570 So.2d 93, 94 (La.App. 4th Cir.1990).
I ALLEGED PROTECTED ACTIVITY
The Plaintiffs assert that the memorandum, which alleged that the IG denied them access to the meeting with the LLA, constituted protected activity in furtherance of the Assessment[2] and that the CSC erred by finding that they were fired for misconduct. The memorandum stated, in part, that:
The state of the investigation/audit conducted by the Legislative Auditor was scheduled for September 9, 2009 at 9:30 am at the ÑOLA OIG office. The meeting was to include representatives of the Legislative Auditor, Interim Inspector General Odom and Forensic Auditors Laura East and Suzi Brown.
On September 4, 2009 newly appointed Inspector General Edouard Quatrevaux was notified by First Assistant in charge of Investigations Len Odom of the meeting, the contents of the unpublished report, the investigation/audit by the Legislative Auditor and of the confidential nature of the situation. On September 9, 2009 representatives of the Legislative Auditor showed up for the meeting and were denied access to Forensic Auditors East and Brown by IG Quatre-vaux.
Rule II, § 10.1 of the Rules of the Civil Service Commission of the City of New Orleans (“Rules”) provides that:
No employee shall be subjected to discipline or discriminatory treatment by an appointing authority because he or she gives information, testimony or evidence in a prudent manner to appropriate authorities concerning conduct prohibited by law or regulation which he or she reasonably believes to have been engaged in by any person(s). If an employee incurs such treatment despite this admonition, he or she shall have a right of appeal to this Commission.
The CSC found that the creation and submission of the Assessment constituted protected activity, but that the memorandum included comments, which could be construed as accusing the IG of obstructing justice. We agree with the CSC.
At the hearing, Ms. Brown testified that the Assessment was initiated by Len 1 sOdom, an interim inspector general, originally supposed to be conducted under the generally accepted government auditing standards (“GAGAS”), but the lack of rec *928 ords and audits prevented the usage of GAGAS. Ms. Brown stated that Mr. Odom allegedly instructed the Plaintiffs to present the Assessment, which alleged waste, abuse, and mismanagement, to the state inspector and the state ethics review board. Ms. Brown testified that she and Ms. East met with the state inspector on August 28, 2009, to give him a copy of Assessment and discuss its contents. All three of the above parties then met with Daniel Daigle, the director of compliance audit for the LLA’s office later that day. Ms. Brown expressed that Mr. Daigle believed that the IG’s office should be placed under investigation. Ms. Brown further testified that she did not meet with the LLA on September 9, 2009. Finally, Ms. Brown stated that the purpose of the LLA’s meeting on September 9, 2009, “was to come and meet with us related to the investigation, and they were also going to meet with the Inspector General or interim whoever was in charge of the office at that point in time.” Therefore, she concluded that they were denied access to the LLA.
Ms. East testified that she discovered possible violations of laws and regulations when preparing the Assessment. Like, Ms. Brown, Ms. East stated that the meeting on September 9, 2009, was supposed to include the Plaintiffs and the IG.
Jerry Carlyle, the deputy inspector general for audit and review who supervised both Plaintiffs for a time during their employment, testified that he found that the Plaintiffs’ were competent and professional with strong work ethics. Further, he stated that he informed the IG that the Plaintiffs’ terminations were |fiinappropriate.
Conversely, the IG testified that it “didn’t occur” to him to invite the Plaintiffs to his meeting with the LLA on September 9, 2009. Further, he stated that the person from the LLA’s office, Mr. Daigle, never requested the presence of the Plaintiffs during the September 9, 2009 meeting. The IG testified that the Plaintiffs’ firing was not related to the Assessment. Dave Westerling, the acting inspector general while the IG was on temporary leave, allegedly read the accusatory memorandum to the IG on September 22, 2009. Above all, the IG stated that the Plaintiffs’ claim, in the September 10, 2009 memorandum, that the LLA was “denied access to Forensic Auditors” by the IG was a false statement that the assertions were “detrimental to” his “reputation.” Lastly, the IG testified that the memorandum “was supreme” in deciding to terminate the Plaintiffs because “voracity [sic] is everything in an auditor.” He then instructed Mr. Westerling to terminate the Plaintiffs on September 23, 2009.
The telephone deposition of Mr. Daigle was entered into the record in lieu of live testimony. Mr. Daigle was the director of compliance audit for the LLA and testified that the purpose of the September 9, 2009 meeting was to introduce himself to the new inspector general as a courtesy. Further, Mr. Daigle stated that he never requested the Plaintiffs’ presence at the meeting and that he was never denied access to the Plaintiffs. Lastly, he did not seek to gain access to the Plaintiffs after their termination.
Mr. Odom’s deposition was also entered into the record in lieu of live testimony. Mr. Odom testified that he never had an issue with the Plaintiffs’ work product, work ethics, or commitment to their jobs. Mr. Odom initiated the Assessment and stated that it was intended to “get the inventory and assess where |7we were.” Further, Mr. Odom commented that the Assessment was like record keeping and was not designed as an audit. He never supervised the Plaintiffs and has no knowledge of the IG’s office after resigning.
*929 Neely Moody, who held the positions of director of criminal investigations, assistant inspector general in charge of audit and review, and independent police monitor, also testified via deposition in lieu of live testimony. Mr. Moody testified that he gave the Plaintiffs guidance to perform an assessment, which was not a “full blown audit.”
Considering the juxtaposed testimony in the record before the CSC, the factfinder in the case sub judice, we do not find that the CSC committed manifest error and a reasonable factual basis exists for its conclusion. The Plaintiffs testified that they were supposed to attend the meeting on September 9, 2009, whilst the IG testified that he never thought of including them and that Mr. Daigle never requested their presence. In fact, Mr. Daigle testified that he never requested the Plaintiffs’ attendance and believed that the meeting was intended for his own introductory purposes with the new IG. Given the conflicting testimony, we cannot find that the CSC was manifestly erroneous in concluding that the Plaintiffs were fired for misconduct. Alleging that they were denied access to a meeting that testimony reflects the Plaintiffs were not invited to casts serious aspersions against their employer, the IG. Thus, given that the Plaintiffs were fired for this misconduct and that they were not invited to the meeting, the memorandum cannot be considered as protected activity or as written in furtherance of the Assessment. Therefore, we find that the CSC did not err and affirm.

DECREE

For the above mentioned reasons, we find that the CSC aptly determined the |scredibility of the witness’ testimony in finding that the Plaintiffs were terminated for misconduct. Therefore, the CSC did not commit manifest error and we affirm.
AFFIRMED
BONIN, J., dissents with reasons.

. Mr. Fox is no longer the chief of criminal investigations at the OIG.

. This allegation was not brought before the CSC.