553 So.2d 482 (1989)
Louis E. CLAVERIE
v.
L.S.U. MEDICAL CENTER IN NEW ORLEANS.
No. CA 88 1549.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
*484 Alfredo Suescum, New Orleans, for appellant.
William A. Norfolk, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civil Service Legal Counsel, Dept. of State Civil Service, Baton Rouge, for Herbert L. Sumrall, Director, Dept. of State Civil Service.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
LeBLANC, Judge.
This is an appeal from a decision of the Civil Service Commission upholding plaintiff's five day suspension for noncompliance with a departmental rule regarding sick leave. For the following reasons, we affirm.

FACTS
Plaintiff, Louis E. Claverie, is employed, with permanent status, by the Louisiana State University Medical Center as a Police Officer II. On Friday, March 6, 1987, he called his employer to report he was taking sick leave that day. Plaintiff's superior, Albert Laville, was told later that day by the manager of the resident hall where plaintiff was assigned that plaintiff would probably call in sick the next day because he had something to do. Mr. Laville gave instructions to Corporal David Smith that, in the event that plaintiff called in sick on Saturday, Corporal Smith was to set up surveillance of plaintiff's residence to see if he left the house. When plaintiff called in sick the next day, Corporal Smith, along with Officer Robert Davis, set up surveillance of plaintiff's residence at approximately 4:00 p.m., when plaintiff had been scheduled to report to work. They sat in an unmarked car, legally parked a short distance from plaintiff's house. At approximately 4:50 p.m., plaintiff came out of the house, got into his car and drove away. Smith and Davis attempted to follow, but soon lost plaintiff in traffic. They returned and again parked near plaintiff's residence. Plaintiff returned at approximately 6:15 p.m. At or near 7:00 p.m., plaintiff left the house with a female companion and drove away. Again, Smith and Davis unsuccessfully attempted to follow plaintiff. They thereupon maintained surveillance of plaintiff's house until approximately 9:00 p.m., at which time he had not returned. Plaintiff again called in sick the following day.
A meeting regarding this matter was held between plaintiff and his superiors on March 11, 1987. According to the testimony of plaintiff's supervisors, plaintiff initially denied leaving his house on the days he took sick leave. When informed there were witnesses to the contrary, defendant subsequently stated that he might have gone out on Friday or Sunday. However, according to plaintiff he immediately admitted at the meeting that he left his house to go to the doctor on Friday and to the grocery store on Saturday and Sunday. Plaintiff brought a statement to the meeting from a physician indicating he was under the physician's care from March 6 through March 11, 1987. The statement did not specify the nature of this care or of plaintiff's illness.
There was a departmental rule in effect at the time in question which required an employee on sick leave to call in and notify his supervisor if it became necessary for him to leave his residence while on sick leave. It was for failing to comply with this rule that plaintiff was suspended for five days.
After plaintiff appealed his suspension, a hearing was held before a civil service referee. The referee thereafter issued a decision upholding the suspension. Plaintiff appealed this decision to the Civil Service Commission. Upon review, the Commission adopted the referee's findings of fact, but held that: "It does not appear to us that the failure to call in under the circumstances... can, without the requirement of the rule, be considered cause for the disciplinary action ... [I]t would appear to us to be incumbent upon the appointing authority to prove that the appellant was aware, or, should have been aware, of this obligation." Accordingly, the Commission reversed the referee's decision and remanded the matter to him to make a determination on this issue.
The evidence presented at the second hearing revealed that the policy in question *485 became effective no later than June 9, 1982, when a memorandum outlining the rule was circulated. It was also established that the normal procedure in adopting new policies is for the policy to be posted on a bulletin board for several weeks at each of the locations manned by the campus police and then placed in a procedure manual maintained at each location. Shortly after beginning his employment with the campus police, plaintiff read the manual at his location. However, he testified he did not see the rule in question, nor did anyone tell him of it.
Officer William Gabbard testified the rule was not in the resident hall manual when he looked for it on March 9, 1987. However, he specifically remembered seeing the policy in this book sometime during the summer of 1985.
After the second hearing, the referee issued a decision which again upheld plaintiff's suspension and included the following findings of fact.
1. Appellant [plaintiff] had requested sick leave for March 6, 7 and 8, 1987.
2. Rules of the department employing appellant required that an employee on sick leave telephone the department when leaving his home. The purpose of the rule is to keep employees from using sick leave for purposes other than illness or injury.
3. The sick leave rule was in the procedure book at each work location when appellant began his employment with the L.S.U. Medical Center in New Orleans.
4. Police Officers employed by the L.S.U. Medical Center in New Orleans are required to read the procedures book to familiarize themselves with the duties of their post and with the agency's policies. Appellant should have known of the sick leave rule.
5. Appellant left his home on each day of the three days he was on leave, without complying with the rule. On March 7, 1987, he left his home on two occasions, without complying with the rule.
Upon review, the Commission adopted the referee's decision. Plaintiff has now taken an appeal to this court.

ISSUES
The issues presented on appeal are:
1. Whether the surveillance of plaintiff's residence constituted an illegal search or an invasion of plaintiff's privacy?
2. Whether the Commission erred in concluding noncompliance with the departmental rule in question was sufficient legal cause for disciplinary action?
3. Whether the Commission erred in concluding plaintiff knew or should have known of the rule which he is charged with violating?

ISSUE ONE
Plaintiff argues all testimony regarding the observations made during the surveillance of his house should have been excluded, because the surveillance illegally violated his constitutional rights. He contends the referee erred in ruling it is irrelevant in a civil service hearing how evidence is obtained.
We pretermit the issue of whether evidence obtained in violation of constitutional rights can be introduced in civil service proceedings, because we find that no violation of plaintiff's constitutional rights has occurred in this case.[1]
The Fourth Amendment to the U.S. Constitution and Article 1, Section 5 of the Louisiana Constitution each prohibit unreasonable searches. Article 1, Section 5 of the Louisiana Constitution also prohibits unreasonable invasions of privacy. However, *486 we do not believe these prohibitions have been violated in the instant case. First, we do not feel the observation of plaintiff's residence from a public street constituted either a search or an invasion of privacy. It is well-settled that visual observations by an officer from a place where he has a right to be is not a search within the meaning of the constitutional prohibitions against unreasonable searches and seizures. See, United States v. Coplen, 541 F.2d 211 (9th Cir.1976), cert. denied, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d. 791 (1977) (officer's conduct of looking into an airplane with a flashlight was not a "search"); State v. Moses, 367 So.2d 800 (La.1979) (officers deliberately listening to conversation of the defendant in an adjoining room, without the aid of electronic listening devices, did not constitute a search).
The U.S. Supreme Court in Florida v. Riley, ___ U.S. ___, 109 S.Ct. 693, 696, 102 L.Ed.2d 835 (1989), recently asserted that "[a]s a general proposition, the police may see what may be seen from a public vantage point where [they have] a right to be" without any necessity of obtaining a warrant. The Court held that a police officer's observation of the interior of defendant's partially covered backyard greenhouse, from a vantage point of a helicopter circling 400 feet above the greenhouse, did not constitute a "search" for which a warrant was required.
Even assuming arguendo that the surveillance constituted a search or an invasion of privacy, the respective constitutional prohibitions only provide protection against unreasonable searches and invasions of privacy. The essential inquiry in making the determinations of whether a search or invasion of privacy is unreasonable is whether an individual has a subjective expectation of privacy that is constitutionally protected. California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); State v. Williams, 490 So.2d 255 (La.1986), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987). An individual usually can have no reasonable expectation of privacy with respect to that which he knowingly exposes to the public. Florida v. Riley, supra.
In this case, the conduct observed was plaintiff openly walking out of his house to his car, which was parked on the street, getting in and driving away. This observation was made from the vantage point of another car legally parked on the street. Under these circumstances, we do not believe plaintiff had any reasonable expectation of privacy with regard to these activities which society is prepared to recognize. See, State v. Brown, 395 So.2d 1301 (La. 1981) (no reasonable expectation of privacy with respect to objects lying on defendant's driveway); State v. Wilbourn, 364 So.2d 995 (La.1978), cert. denied, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979), (no reasonable expectation of privacy in carport not enclosed from street, and only partially enclosed on one side); State v. Freeman, 503 So.2d 501 (La.App. 4th Cir. 1987) (no reasonable expectation of privacy with respect to activities on defendant's front porch and at his back door, which were observed by officers on a public street). Thus, the referee did not err in allowing the testimony regarding plaintiff's activities, which was obtained by the surveillance of his house on Saturday, March 7, 1987. In any event, we note that plaintiff admitted, and the referee specifically found, that plaintiff also left his residence without complying with the call-in rule on both Friday, March 6 and Sunday, March 8, 1987. Thus, even without the testimony regarding plaintiff's activities on Saturday, the record established he failed to comply with the call-in rule on at least two other occasions.

ISSUE TWO
Plaintiff contends the Commission erred in concluding legal cause existed for the *487 disciplinary action taken against him, because it was not shown by L.S.U. that his conduct impaired the efficiency of the public service.
Legal cause for disciplinary action against a permanent, classified civil service employee exists whenever that employee's conduct is detrimental to the efficient and orderly operation of the public service for which he is employed. Hill v. Dept. of Health and Human Resources, 457 So.2d 781 (La.App. 1st Cir.1984). The appointing authority bears the burden of proving such conduct by a preponderance of the evidence. Id. An appellate court should not reverse the Commission's determination as to whether legal cause exists for disciplinary action unless the decision is arbitrary, capricious or an abuse of the Commission's discretion. Walters v. Dept. of Police of New Orleans, 454 So.2d 106 (La.1984).
When asked at one of the hearings how plaintiff's noncompliance with the rule in question impaired the efficiency of the public service, Albert Laville, Director of Campus Police, replied that it did not do so because a substitute had already been arranged to cover plaintiff's position. Plaintiff relies on this statement to support his argument that no impairment occurred in this instance.
At first glance, Mr. Laville's statement seems to validate plaintiff's argument. However, when considered in the context of the entirety of Mr. Laville's response, it becomes obvious that this isolated statement does not fully reflect L.S.U.'s position. Mr. Laville's complete response to the question was as follows:
A. ... It doesn't impair it already because we already made the coverage.
REFEREE: Uh'huh.
A. That is basic to assure us that the man that calls-in sick is not running all around the street when he's on sick leave. That's against the rules and regulations of Civil Service.
REFEREE: All right. So you're giving me then the rationale or the reason for the policy.
A. Yes sir, to you know to make certain that the man is sick, that he's just not runningcalls-in sick, goes does something else because weI think we're all quite aware of that peoplethere is some people that do these things. When they can't get their day off they want, they call-in sick and they go do what they got to do. I'm charged with the responsibility under the sick act of Civil Service to set-up a procedure and aa policy, if you will, to make certain that people do not abuse their sick time. That is what I've done.
It is apparent from the above that a substitute was arranged to cover plaintiff's position on the days he took sick leave. This is obviously what Mr. Laville meant to convey when he stated there was no impairment of the public service because they had "already made the coverage." However, our understanding of Mr. Laville's full response is that plaintiff's conduct nevertheless impaired the efficient and orderly operation of the public service because it disregarded a means this particular appointing agency had found necessary to prevent abuse of sick leave. If employees are allowed to disregard this rule at will because they know that substitutes will be arranged for them, one of the methods the appointing authority had chosen to enforce compliance with its sick leave policy would lose all effectiveness. While this particular rule may seem strict, it is not totally without a rational basis and it is not our function to second-guess administrative decisions made by the appointing authority. We believe plaintiff's arbitrary failure to comply with the call-in rule hindered his superiors in enforcing L.S.U.'s sick leave policies and, hence, impaired the efficient and orderly operation of the agency. Accordingly, we do not find the Commission's determination that legal cause existed for disciplinary action against plaintiff to be arbitrary, capricious or an abuse of the Commission's discretion.

ISSUE THREE
Lastly, plaintiff argues the Commission erred in concluding he knew, or should *488 have known, of the existence of the rule he is charged with violating.
This determination is a finding of fact, which is entitled to the same deference accorded to factual findings of a judge or jury. Bruno v. Department of Police, 462 So.2d 139 (La.1985) cert. denied, 474 U.S. 805, 106 S.Ct. 39, 88 L.Ed.2d 32 (1985). Such findings can not be disturbed on appeal unless they are clearly or manifestly erroneous. Walters, supra.
There was evidence presented herein indicating the call-in rule was placed in the procedure manuals sometime in 1982 and was still in the manual at the resident hall where plaintiff was stationed as late as the summer of 1985. Plaintiff admitted he read the manual, as he was instructed to do, shortly after he began his employment with campus police in January of 1984. Under these circumstances, we can not say the Commission committed manifest error in concluding plaintiff knew, or should have known, of the rule in question.
For the above reasons, the decision of the Commission is affirmed. Plaintiff is to pay all costs of appeal.
AFFIRMED.
LOTTINGER, J., concurs.
NOTES
[1] During the initial hearing on this matter, L.S.U. made an oral motion for partial summary deposition of that portion of plaintiff's appeal pertaining to allegations of "illegal surveillance". The referee granted the motion concluding, as stated above, that it was irrelevant in civil service appeals how the charged misconduct was discovered. Plaintiff complains that this ruling violated his constitutional right to due process because it deprived him of an "opportunity to bring forth evidence on the constitutionality of Appellee's [L.S.U.] actions ..." We disagree, noting that each of the parties involved in the surveillance of plaintiff's residence testified at the hearing and plaintiff had an opportunity to fully cross-examine them and develop the facts surrounding the surveillance. In fact, the details of this surveillance were fully brought out at the hearing. Plaintiff has not specified what additional evidence, if any, he could present to shed further light on this matter. There is no merit to plaintiff's contention that he was deprived of due process in this instance.