588 So.2d 1218 (1991)
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF STATE POLICE
v.
Joseph F. PIAZZA (Two Cases).
Nos. 90 CA 1241, 90 CA 1242.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Rehearing Denied January 3, 1992.
*1219 James C. Dixon, Sr. Atty., Dept. of Public Safety & Corrections, Office of the Gen. Counsel, Baton Rouge, for appellant.
Floyd J. Falcon, Jr., Avant and Falcon, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civ. Service Gen. Counsel, Dept. of State Civ. Service, Baton Rouge, for Herbert L. Sumrall, Director of the Dept. of State Civ. Service.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Joseph F. Piazza, an employee of the Department of Public Safety, Office of State Police (DPS), was terminated from his position as a Louisiana State Trooper First Class for using cocaine during his employment. Piazza appealed his termination to the Civil Service Commission ("Commission"). After an administrative hearing the Commission referee granted the appeal and reversed the termination. DPS was ordered to reinstate Piazza with back pay and to pay his attorney's fees of $1,000.00. The Commission denied plaintiff's application for review, making the referee's decision the final decision of the Commission. DPS brings this appeal.
On December 2, 1987, at approximately 12:00 noon Piazza reported to Captain Gary McDonald in Internal Affairs. McDonald and Lieutenant Terry Shirley interviewed Piazza regarding his knowledge of alleged drug trafficking by Nicky Muscarello, another state trooper and Piazza's former roommate.[1] During the interview Piazza admitted to the recent use of steroids and to the use of cocaine while in high school.
*1220 McDonald and Shirley noticed during the interview that the pupils of Piazza's eyes fluctuated from pinpoints to completely dilated every five to ten minutes. McDonald and Shirley both testified that during their years with the state police they had witnessed similar optical anomalies when dealing with drug addicts. McDonald then terminated the interview and requested Piazza take a polygraph examination. According to McDonald, the polygraph covered both Piazza's knowledge of Muscarello's activities and Piazza's own drug use. When the polygraph was complete, Trooper Raymond Furca took Piazza to the office of Dr. Vance Byars, a physician in private practice under contract with DPS, to give blood and urine samples.
At approximately 5:30 p.m., Furca returned to Internal Affairs with Piazza. McDonald told Piazza there were some problems with the results of the polygraph. McDonald and Shirley took Piazza to the Internal Affairs interview room. Adjacent to the interview room is an observation room, which is equipped with a large two-way mirror which enables one to clandestinely observe persons in the interview room. The observation room also is equipped with a speaker connected to a microphone in the interview room. Trooper Henry Reed positioned himself in the observation room.
Piazza asked if he could speak to McDonald "man-to-man." Shirley left the interview room and joined Reed in the observation room. Shirley and Reed both testified unequivocally they could clearly hear every word spoken in the interview room.
McDonald, Shirley and Reed all testified that during this "man-to-man" conversation Piazza admitted to McDonald that while employed as a state trooper he had used cocaine on two occasions while partying with friends. They further testified Piazza stated he had disgraced the state police and did not deserve to wear a trooper's uniform.
The referee found as fact that McDonald did not ask Piazza to elaborate on the circumstances under which he had used cocaine and did not attempt to take a recorded statement at that time because Piazza was upset and because McDonald had two witnesses to Piazza's admission.
According to McDonald, Piazza initially indicated he wanted to resign in lieu of disciplinary action, but after telephoning his father, a retired state trooper, Piazza changed his mind. Piazza testified, however, that he never offered to resign but that "they tried to make me resign." When Piazza declined to resign, he was suspended.
After Piazza was suspended, he was driven home by Reed. Reed and Piazza had known each other approximately ten years; both resided in Hammond. Reed's and Piazza's testimony conflict regarding their conversation during this trip, and the referee made no finding on this issue. Piazza testified they discussed "nothing about the case." Reed, however, testified that Piazza, who was unaware that Reed had monitored his conversation with McDonald in the interview room, told Reed that he had disgraced his trooper's uniform while partying with friends and that he wanted to resign. Although the word "cocaine" was not spoken by either party, Reed testified Piazza implied he had disgraced himself by using illegal drugs.
The following morning, December 3, 1987, McDonald met with Piazza and asked him to repeat the admissions he made the previous evening in a formal taped statement. At that time, Piazza denied any illegal drug use while employed by the state police and further denied making any admission of drug use on the previous day. McDonald testified that after everyone else had left the room and after the recorder had been turned off, Piazza told him: "What I said last night was off the record man-to-man."
The test on the urine sample taken from Piazza on December 2, 1987, was positive for cocaine. Piazza's employment with DPS was terminated March 31, 1988.
The Commission referee found this case involved two primary issues: (1) whether Piazza's admissions, standing alone, were sufficient legal cause for termination; and (2) whether the results of the urine test *1221 were admissible. Before taking any evidence, the referee stated: "[I]f they can't prove that he used cocaine [through the test results] during his employment but they can prove that he told Captain McDonald he did, they're not going to win their action." The referee further stated that if the urine test results were found inadmissible, in her opinion Piazza's admission would not constitute legal cause for termination.
After hearing the evidence, the referee found DPS had failed to lay a sufficient foundation for admissibility of the results of the urine test and reversed the termination, based on the prior ruling that the admission to McDonald alone was insufficient legal cause for disciplinary action. The referee made no findings regarding the alleged statement by Piazza to Reed during the drive to Hammond or Piazza's statement to McDonald following the attempt to have Piazza reiterate his admission on December 3. The referee apparently found it unnecessary to rule definitively whether Piazza admitted to drug use while a trooper but simply stated "under the circumstances" the statement to McDonald alone was not reliable enough to support disciplinary action and the conditions under which the statement was made "cast doubt as to whether it was accurately over-heard (sic) or interpreted."
The "circumstances" or "conditions" upon which the referee based the opinion that the statement was not reliable enough to establish cause were these: (1) Piazza was upset and "bewildered ... by the time of the 5:00 p.m. or 5:30 p.m. interview"; (2) McDonald did not ask Piazza to elaborate on the circumstances under which the cocaine had been used, such as whether the cocaine had been prescribed by a licensed medical practitioner; and (3) McDonald did not attempt to have Piazza repeat the statement so he could record it on the evening it was given.
There is no evidence in the record to support the referee's first finding, that Piazza was bewildered at the time of the interview. Reed testified that during the ride from Baton Rouge to Hammond, after Piazza had been suspended, Piazza seemed "somewhat bewildered" that things had happened so quickly. Piazza gave no testimony regarding his mental state at the time of the interview on the evening of December 2; he described the interview as "a little chat" with the captain. McDonald, Reed, and Shirley testified that Piazza became upset after he admitted using cocaine while a trooper and was close to tears when stating he had "shamed the Department," but there was no testimony indicating Piazza was confused or did not know what he was doing at the time he made the statement.
The second and third circumstances, the lack of recording and elaboration of circumstances, are explained by the referee's own findings. McDonald did not ask Piazza to elaborate on the circumstances of his cocaine use or attempt to get a recorded statement on December 2 because McDonald knew there were two witnesses to the admission. There was no need for McDonald to question Piazza regarding whether the cocaine was used under a doctor's care; Piazza stated he used the drug "while partying with friends." Furthermore, cocaine cannot legally be prescribed. See State v. Rodriguez, 554 So.2d 269 (La. App. 3d Cir.1989), writ granted in part (on other grounds), denied in part, 558 So.2d 595 (La.1990); State v. Johnson, 513 So.2d 832 (La.App.2d Cir.1987), writ denied, 519 So.2d 124 (1988). These circumstances do not make the statement unreliable.
To the contrary, a statement which is against a party's interest is considered reliable because a person rarely knowingly lies to his disadvantage; a person generally will not make an untrue statement if he knows the statement will injure his patrimony or liberty. Of course, one must consider whether the declarant had a motive to falsify when the statement was made.[2]
*1222 This court can fathom no motive for a police officer to tell his superior officer that he had used illegal drugs while employed as a police officer if it were not the truth. It was stipulated at the hearing that cocaine is a narcotic drug, simple possession of which is a felony. It was also stipulated that use of cocaine while in the employment of the Louisiana State Police is a violation of Procedural Order Number 201, Code of Conduct and Ethics, Section I, Subsection B, Paragraph 14.[3] These factors lend credence to the testimony of McDonald, Shirley, and Reed.
There is also little evidence, other than Piazza's self-serving testimony, to support the referee's statement that the alleged admission of December 2 may have been inaccurately overheard and interpreted. McDonald and Piazza were sitting across a table from one another during the interview; Reed and Shirley were in an adjoining room where they could both see and hear the conversation between McDonald and Piazza. Had the testimony of McDonald, Reed, and Shirley been that the only statement Piazza made regarding his cocaine usage was that he used the drug while a trooper, Piazza's contention he was misunderstood might be more plausible. However, McDonald, Reed, and Shirley also testified Piazza tearfully stated he had shamed the state police. It is difficult to understand why Piazza would have felt he "disgraced the uniform" if his drug use had not been while on the force. The statements made to Reed on the drive to Hammond and to McDonald the following day also tend to show the statements to McDonald on December 2 were accurately overheard and interpreted.
The decision of the Civil Service Commission is subject to review on any question of law or fact. La. Const. art. X, § 12(B); Walters v. Department of Police, 454 So.2d 106, 113 (La.1984). The Louisiana Supreme Court has held a reviewing court should not reverse a Commission conclusion as to the existence or absence of cause for dismissal unless the decision is arbitrary, capricious, or an abuse of the Commission's discretion. In deciding whether to affirm the Commission's factual findings, an appellate court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. However, in reviewing the Commission's interpretations of law, the judicial review function is not so limited. Walters, 454 So.2d at 113-114.
No classified state employee shall be subjected to disciplinary action except for cause expressed in writing. La. Const. art. X, § 8(A); Dept. of Public Safety & Corrections v. Hooker, 558 So.2d 676, 679 (La.App. 1st Cir.1990). Cause for the dismissal of a person who has gained permanent status in the classified civil service includes conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. Walters, 454 So.2d at 113; Hooker, 558 So. 2d at 679. Conduct which constitutes a violation of a criminal statute may constitute cause. Hooker, 558 So.2d at 679; Sanders v. Dept. of Health & Human Resources, 394 So.2d 629 (La.App. 1st Cir. 1980), writ denied, 399 So.2d 602 (La.1981).
We find that an admission by a state trooper that he used cocaine while employed by the state police, in violation of both criminal law and the state police Code *1223 of Conduct and Ethics, is sufficient legal cause for disciplinary action. In doing so he has violated the laws he is sworn to uphold. Since use of cocaine is prohibited at any time, on or off duty, by state police regulations and by criminal law, the circumstances under which the drug was used are immaterial. To the extent the Commission held to the contrary, it committed an error of law.
The appointing authority, DPS, has the burden of proving legal cause for disciplinary action by a preponderance of the evidence. We find that DPS proved by a preponderance of the evidence that Piazza used cocaine while employed by the state police in violation of the Code of Conduct and Ethics of that body. That evidence includes Piazza's statement to McDonald on December 2 which was heard by Reed and Shirley, his statement to Reed during the drive from Baton Rouge to Hammond, and his statement to McDonald on December 3. We thus hold that the Commission erred in reversing Piazza's termination. Because of this finding, we pretermit discussion of whether the results of the urine test were admissible.
For the foregoing reasons, the decision of the Civil Service Commission in favor of Joseph F. Piazza and against the Department of Public Safety is reversed. All costs are to be borne by appellee, Joseph F. Piazza.
REVERSED AND RENDERED.
NOTES
[1] Before they became roommates, Piazza and Muscarello were married to sisters.
[2] We note that the rules of evidence applicable to civil trials control this case. Civil Service Rule 13.19(d). The criminal rule of evidence that requires independent corroboration for the admission (corpus delicti) does not apply. See, for example, State v. Willie, 410 So.2d 1019 (La.1982).

The hearsay exception found in Louisiana Code of Evidence article 804(B)(3), while not applicable in this case because Piazza's statement is an admission which is not hearsay under Code of Evidence article 801(D)(2)(a), is certainly persuasive. That article permits the introduction of a statement which would otherwise be excluded as hearsay if the statement "was at the time of its making so contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true." A statement against interest is considered inherently reliable because a reasonable person does not deliberately injure himself. See G. Pugh, R. Force, G. Rault & K. Triche, Handbook on Louisiana Evidence Law, 361-62 (1991); McCormick on Evidence § 279 (E. Cleary ed. 1984).
[3] That order provides in pertinent part: "The use of controlled substances, narcotics, or hallucinogens by any member is prohibited except where prescribed in the care and treatment of a member by a licensed medical practitioner...."