BRIAN DRUMM AND THE CLASS OF
SIMILARLY SITUATED PERSONS, KENNER
FIREFIGHTERS ASSOCIATION LOCAL 1427
IAFF

VERSUS

THE CITY OF KENNER

NO. 19-CA-342

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 795-061, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

March 04, 2020

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Molaison, Jr.

**AFFIRMED**
  **RAC**
  **MEJ**

**DISSENTS WITH REASONS**
  **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
BRIAN DRUMM AND THE CLASS OF SIMILARLY SITUATED PERSONS,
KENNER FIREFIGHTERS ASSOCIATION LOCAL 1427 IAFF
     Laura C. Rodrigue
     Blake J. Arcuri

COUNSEL FOR DEFENDANT/APPELLANT,
THE CITY OF KENNER
     Guice A. Giambrone, III
     Craig R. Watson
     Elicia D. Ford

**CHAISSON, J.**

In this case arising from an employment dispute between the City of Kenner ("Kenner") and its firefighters, Kenner appeals a judgment of the district court granting a preliminary injunction prohibiting Kenner from forcing firefighters to work "out of class" on temporary or substitute appointments under threat of disciplinary or other employment action. For the following reasons, we affirm the judgment of the district court.

FACTS AND PROCEDURAL HISTORY

On May 9, 2019, Brian Drumm, on his own behalf and on behalf of the class of all similarly situated employees of the Fire Department of the City of Kenner, and the Kenner Fire Fighters Association Local 1427 IAFF, an unincorporated labor organization, filed a petition for preliminary injunction, permanent injunction, and declaratory relief. In the petition, plaintiffs alleged that Kenner has ordered Mr. Drumm and other employees of the fire department to temporarily work "out of class" against their wills and under threat of disciplinary action.[1] Plaintiffs alleged further that Kenner is forcing lower ranking employees to temporarily work "out of class" instead of calling available employees who hold the higher positions on an overtime basis, or creating new permanent higher ranking positions, in an effort to reduce payroll costs to Kenner.

The petition details specific instances in April of 2019 where Mr. Drumm, who is currently an operator, submitted a written request stating that he did not want to work out of class through his Captain, District Chief, and Assistant Chief to the interim Kenner Fire Chief. This request was denied by the interim Fire Chief via email the next day and Mr. Drumm was placed on the schedule to work out of class. Mr. Drumm filed a Request for Investigation/Hearing with the

---

[1] To work out of class refers to instances where an employee of lower rank assumes the responsibilities of an employee of a higher rank who is absent. The ranks of the Kenner Fire Department include: firefighter, operator, captain, district chief, assistant chief, and chief.

Kenner Municipal Fire and Police Civil Service Board; however, the board was forced to reschedule its meeting for some time after Mr. Drumm was scheduled to again work out of class, thus prompting the filing of the petition.

Plaintiffs requested that the district court declare they are entitled to accept or decline appointments to work out of class on a temporary, substitute, or emergency basis without threat of discipline or other employment action and that it is unlawful for Kenner to force them to work out of class on a temporary, substitute, or emergency basis under threat of disciplinary or other employment action.

A hearing on the petition was held on May 28, 2019, at which time the district court heard testimony from Mr. Drumm, another fire department employee and president of the firefighters' association, Mr. Michael Giarrusso, and interim Fire Chief Terrence Morris. The court also received into evidence various exhibits including emails, letters, work schedules and requests. On June 12, 2019, the trial court issued a judgment granting the preliminary injunction and ordered that Kenner "is preliminarily enjoined from forcing Petitioners to accept temporary or substitute appointments 'out of class' under threat of discipline or other employment action."

On appeal, Kenner raises three assignments of error:

1) The trial court's granting of the preliminary injunction is in conflict with the statutory authority governing temporary appointments.

2) The trial court incorrectly granted the preliminary injunction, despite plaintiffs' failure to show irreparable harm.

3) The trial court's preliminary injunction is overly broad because the plaintiffs have not been properly certified as a class.

DISCUSSION

A trial court has broad discretion in the granting or denial of a preliminary injunction, and its judgment will not be disturbed on review absent a clear abuse of that discretion. *Yokum v. Pat O'Brien's Bar, Inc.*, 12-0217 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 80. That broad standard, of course, is based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary for the proper exercise of its discretion. *Id.*

An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. La. C.C.P. art. 3601(A). A petitioner is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. *Zeringue v. St. James Par. Sch. Bd.*, 13-444 (La. App. 5 Cir. 11/19/13), 130 So.3d 356, 359, (citing *Jurisich v. Jenkins*, 99-0076 (La. 10/19/99), 749 So.2d 597, 599). Accordingly, if Kenner's actions in forcing Mr. Drumm and other employees to work "out of class" against their wills and under threat of disciplinary action is unlawful, then the petitioners need not show that they suffered irreparable harm.

We note that Kenner, by its own admission, cites no case law or other legal authority in support of its interpretation of the statute governing temporary appointments, La. R.S. 33:2496. In support of its position that the interim Fire Chief's actions are lawful, Kenner argues that the plain language of the statute governing temporary appointments clearly gives the appointing authority, in this case the Fire Chief, the mandatory authority to fill vacancies in the classified service through temporary appointments, and that the absence of any language in

the statute concerning consent or acceptance means that the legislature did not

intend for the appointee to have a "right to refuse" the temporary appointment.

Statutory interpretation begins with the language of the statute itself. *Yount v. Handshoe*, 14-919 (La. App. 5 Cir. 5/28/15), 171 So.3d 381, 386. La. R.S. 33:2496 states, in pertinent part[2]:

> Temporary appointments may be made to positions in classified service without the appointees acquiring any permanent status therein, as follows:
>
> …
>
> (2) A substitute appointment may be made to any position in the classified service (1) from which the regular and permanent employee is away on an authorized leave of absence, or (2) from which the regular employee is substituting for some other regular employee who is authorized to be away from his respective position. No position shall be filled by a substitute appointee for a time beyond that for which the regular and permanent incumbent is away on an authorized leave. Whenever such appointment shall continue for not more than thirty days, *the appointing authority may appoint thereto any one whom he deems qualified*. Substitute appointments made for a period exceeding thirty days shall be made in the same manner as provided in R.S. 33:2494 for the filling of a vacancy by a regular and permanent appointment. Any person employed on a substitute basis shall, for the duration of the temporary employment, enjoy the class title and be entitled and receive the rate of pay for the class and position in which he is employed. The appointing authority shall notify the board within fifteen days following any substitute appointment made for a period to exceed thirty days, the name of the appointee, the class of position filled, the period for which the appointment was made and attach to the notification a signed copy of the leave of absence granted the employee for whom the appointee is substituting.
>
> …
>
> (Emphasis added)

Kenner argues that the language "the appointing authority may appoint

thereto any one whom he deems qualified" plainly means that the Fire Chief may

temporarily appoint whomever he wishes from the lower ranks of employees to

work in higher ranks. From a procedural standpoint, Kenner is correct: this

statutory language clearly provides for the appointing authority to fill vacancies in

---

[2] The statute also allows emergency appointments to be made at any time the needs of the service require because of a local emergency of a temporary and special nature. The parties concede that the temporary appointments being made in this case are substitute appointments, not emergency appointments, and the judgment granting the preliminary injunction makes no reference to emergency appointments.

the classified service through temporary substitute appointments. However, the dispute between the parties at bar concerns not the procedure for the appointment and whether it has been correctly or incorrectly followed, but rather the substantive rights between the parties, and, in particular, whether the language of this statute or any other provisions in law give the Fire Chief the right to force a person to work "out of class" against their will (involuntarily) or whether the appointee has a right to refuse.[3] From this substantive standpoint, the language of the statute that Kenner relies upon is unclear. It makes no reference to rights, refusal, acceptance, or involuntary work. It uses permissive language. That the language cited by Kenner may be read from both procedural and substantive standpoints to reach two different but rational interpretations renders the language ambiguous.

When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 12; *Caldwell v. Janssen Pharm., Inc.,* 12-2447 (La. 1/28/14), 144 So.3d 898, 907. An examination of the language of this statute in context shows: (1) that the legislature intended La. R.S. 33:2496 to set forth the procedure for temporary appointments, not as a substantive alteration of the rights between employers and employees; and (2) that an "appointment" is in the nature of an offer and acceptance of employment that requires voluntary, affirmative consent of the appointee.

The Municipal Fire and Police Civil Service Law found in La. R.S. 33:2471 *et seq.* creates a system of classified employment in municipal fire and police services and sets forth various procedures governing the relations between officers, employees, and civil service boards. Under these statutes, employee vacancies

---

[3] Substantive laws establish new rules, rights, and duties or change existing ones. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. *Church Mut. Ins. Co. v. Dardar*, 13-2351 (La. 5/7/14), 145 So.3d 271, 283.

may be filled through various methods[4]:  demotion (La. R.S. 33:2488), transfer (La. R.S. 33:2489), reinstatement and reemployment (La. R.S. 33:2490), promotional and competitive appointments (La. R.S. 33:2491-2495), and temporary appointments (La. R.S. 33:2496).  The regular method for filling a vacancy in the classified service is set forth in La. R.S. 33:2494, which states in part:

> A. Whenever the appointing authority proposes to fill a vacancy in the classified service, except by demotion, transfer, emergency appointment, or by substitute employment not to exceed thirty days, he shall request the board to certify names of persons eligible for appointment to the vacant position. The board shall thereupon certify in writing the names of eligible persons from the appropriate employment list, and the appointing authority shall, if he fills the vacancy, make the appointment as provided by this Section.
>
> B. The board shall first certify the name of the person appearing upon the reinstatement list who is eligible for the first reinstatement in the class of the vacant position. The name of this person and all others appearing upon the reinstatement list for the class shall be certified and *offered the appointment* in the order provided by R.S. 33:2490(B) before the vacancy is filled by any subsequent method provided by this Part. The appointing authority shall appoint to the vacant position the first person so certified to him *who is willing to accept the appointment*. If the position is one of a class from which lay-offs have been made as provided by R.S. 33:2499 the names of eligible persons appearing upon the reemployment list for the class shall be certified and offered the appointment in the order provided by R.S. 33:2490(C) before any other appointment is made thereto.
> …
> (Emphasis added)

Two points may be drawn from this language:   first, this statute sets forth a different procedure for regular appointments than the statute for temporary appointments.  The regular procedure involves the civil service board which certifies certain names of eligible persons and creates a list, based on seniority, from which the appointing authority must choose for filling vacancies.  This is distinguished from the method for filing temporary appointments set forth in La. R.S. 33:2496, which allows for the appointing authority to temporarily appoint

---

[4] The statute specifically uses the word "method" which is defined as "a particular form of procedure for accomplishing something or approaching something."  (Oxford English Dictionary, 2019).

persons to vacancies without any input from the civil service board or relying upon their list of certified persons. Secondly, the language of this statute, which is referenced in La. R.S. 33:2496, makes explicit reference to "appointments" as offers to persons who are willing to accept them. Those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject. *Borel v. Young*, 07-0419 (La. 11/27/07), 989 So.2d 42, 48, rehearing granted (7/1/08). Thus, when read in the context of the Municipal Fire and Police Civil Service Law as a whole, "appointment" as used in La. R.S. 33:2496 means that an "appointment" is in the nature of an offer and acceptance of employment as that term is used in La. R.S. 33:2494.

We next look at whether the interpretation proposed by Kenner may lead to absurd consequences. Kenner argues that this statute grants the appointing authority the substantive right to appoint persons against their will and that requiring competent and capable personnel to temporarily fulfill a position at the need of the department is not an absurd consequence. They offer as evidence the fact that Mr. Drumm has taken the appropriate tests and is on the list for promotion to Fire Captain as proof that he is competent and capable personnel. This is reasoning *ipso facto*, where evidence of Mr. Drumm's competence is used to support Kenner's position that its interpretation of the statute cannot lead to absurd consequences. The language of the statute cited by Kenner contains no requirement that the temporary appointee have proven competence by passing a test or a certain level of training; rather, it allows the appointing authority broad discretion to appoint "any one whom he deems qualified." Under Kenner's broad interpretation of this statute, the appointing authority has the right to force any employees to work out of class, even those who may be unqualified by other standards set forth in the statute for the classification of firefighters. A newly-hired, untrained firefighter may be forced to work as an operator or captain against

his will.[5]  At the extreme, the appointing authority could hypothetically appoint "any one," even a nonemployee, to temporarily fill a vacant position.  This is a potentially absurd and dangerous consequence of Kenner's interpretation.

In support of its argument that the language of La. R.S. 33:2496 substantively alters the rights and relationship between the employer and employee, Kenner argues that the plain language of the statute makes no reference to offer and acceptance of the appointment or an explicit "right to refuse."[6]  Kenner's position, that the Fire Chief may force persons to work jobs outside their class against their will under threat of disciplinary action denies the existence of a voluntary, contractual agreement of employment in which both parties may freely negotiate their duties and responsibilities.  Recognizing that plaintiffs' employment with Kenner is a voluntary, contractual agreement, we conclude that the "appointment" referenced in La. R.S. 33:2496 is in the nature of an offer and acceptance of employment.  Forcing an employee to work out of class against his will under threat of discipline or other employment action is an unlawful act, and therefore plaintiffs were not required to show irreparable harm.  Accordingly, we find Kenner's argument that the district court legally erred in granting the preliminary injunction is without merit.

In its final assignment of error, Kenner argues that the trial court erred in granting the preliminary injunction prior to class certification.  Again, it cites no

---

[5] The alternatives to forcing employees to work out of class would be to either create more permanent higher ranking positions or pay existing employees of the needed higher rank to work overtime.  The interim Fire Chief testified that when he needed a captain for a shift, he did not ask already qualified captains to step in temporarily because paying them overtime is more expensive than paying lower ranked employees an extra $1.16/hour to work out of class.

[6] Kenner points to the dearth of authoritative support cited by plaintiffs as evidence that there is no such right.  The authority offered by plaintiffs in support of their interpretation include:  a case from the Third Circuit making reference to a firefighter's right to refuse step up promotions, *Lafayette Profession Firefighters Ass'n v. Lafayette City-Par. Consol. Gov't*, 07-755 (La. App. 3 Cir. 12/5/07), 971 So.2d 487, 490; an advisory opinion from the La. Attorney General stating that an "appointment" to a position as contemplated by La. R.S. 33:2496 is in the nature of an offer and acceptance of employment, Op. Att'y Gen. No. 92-164 (Sept. 4, 1992); and a 2010 decision of the Civil Service Board finding in favor of a firefighter, Mr. Mannino, who was forced to work as an acting fire captain after requesting not to.  In our opinion, this dearth of support, however, points not to the absence of a right, but rather to a common understanding that employment relationships are voluntary, contractual arrangements.

legal authority in support of its position that a class action certification is required prior to granting injunctive relief. Upon review, we do not find the language of the preliminary injunction to be overly broad. The district court considered the evidence of Mr. Drumm and a representative of the firefighters' association that multiple firefighters had been forced to work out of class against their will. Kenner's unlawful actions equally affect Mr. Drumm and all members of the proposed class who are also forced to work out of class against their will, and the trial court correctly exercised its authority to grant preliminary injunctive relief prior to class certification. We note that the language of the injunction does not forbid the appointing authority from making any temporary appointments, only those against the will of the appointees under threat of discipline or other employment action. Those employees who wish to work out of class upon being offered the opportunity are free to do so.

CONCLUSION

Having concluded that the district court did not abuse its discretion in granting a preliminary injunction prohibiting Kenner from forcing firefighters to work "out of class" on temporary or substitute appointments under threat of disciplinary or other employment action, we therefore affirm the judgment of the district court.

**<u>AFFIRMED</u>**

BRIAN DRUMM AND THE CLASS OF
SIMILARLY SITUATED PERSONS,
KENNER FIREFIGHTERS
ASSOCIATION LOCAL 1427 IAFF

VERSUS

THE CITY OF KENNER

NO. 19-CA-342

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

## MOLAISON J., DISSENTS WITH REASONS

The Kenner Fire Department and its firefighters, as an agency of "first response," have a simple but vital purpose of protecting life and property in time of crisis, for which advance preparation and constant readiness are necessary. This includes adequate staffing at all times for all positions in every firehouse within its jurisdiction, while also working within the reality of budgetary constraints. To that end, as acknowledged by the majority, the plain language of La. R.S. 33:2496(2) provides a clear and pragmatic authority to the KFD to fill vacancies in the classified service through temporary appointments to a person deemed qualified to fill the position.[1] Given the unique, highly specialized, and often hazardous work that firefighters undertake, the importance of placing and keeping competent men and women in those positions is certainly in the best interest of the public and the government that serves it.[2]

---

[1] That provision states, in relevant part:

> (2) A substitute appointment may be made to any position in the classified service (1) from which the regular and permanent employee is away on an authorized leave of absence, or (2) from which the regular employee is substituting for some other regular employee who is authorized to be away from his respective position. No position shall be filled by a substitute appointee for a time beyond that for which the regular and permanent incumbent is away on an authorized leave. Whenever such appointment shall continue for not more than thirty days, the appointing authority may appoint thereto any one whom he deems qualified.

[2] In *Babin v. Houma Mun. Fire & Police Civil Serv. Bd.*, 327 So.2d 682, 687 (La. Ct. App. 1976), for example, the First Circuit recognized in the context of temporary assignments that, "it was imperative that the municipal fire department be adequately and properly staffed so that the efficiency of its operation would not be impaired."

19-CA-342                                      1

In the instant case, the record demonstrates Mr. Drumm's competence and ability to act in the temporary appointed position: he successfully completed all requirements to become a Fire Captain, and he is currently in the queue to fill that position in the future. Under these facts, I do not find Mr. Drumm's temporary appointments by the KFD to be absurd or unreasonable.[3]

In Louisiana's private sector, an employer expects an employee to follow its lawful requests or direction in the work performed. While an employee retains the absolute right to refuse such requests or assignments, or to vacate their position altogether for good cause,[4] an employer is under no obligation to retain an employee who refuses to comply with the basic requirements of his or her employment. I believe that the instant case presents an important issue of whether a government employer should be forced into a position where it must accept the arbitrary refusal of a government employee to comply with a statutorily authorized procedure that helps to provide continuity in the execution of its public duty.[5]

---

[3] The appointing authority has much discretion in choosing employees properly certified as eligible and promotions do not take place automatically or as a matter of right. *Dauser v. Dep't of Pub. Utilities (Water),* 428 So. 2d 1176, 1178 (La. Ct. App. 1983).

[4] As explained by the First Circuit *in Gonzales Home Health Care, L.L.C. v. Felder*, 08-0798 (La. App. 1 Cir. 9/26/08), 994 So.2d 687, 693, *writ not considered*, 08-2568 (La. 1/9/09), 998 So.2d 730:

> The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman and not the supersensitive. *Guillot v. Arbor Group, L.L.C.*, 34,469, p. 4 (La.App. 2 Cir. 3/2/01), 781 So.2d 864, 868. The good cause contemplated by the statute must be from a cause that would reasonably motivate the average able-bodied and qualified worker in a similar situation to give up his or her employment. *Id.*
> Good cause connected with a person's employment means a cause connected with working conditions, ability of the employee to continue the employment, availability of transportation to and from work, and other factors that affect the employee's ability or right to continue work or that affects the benefits he may receive from his employer either upon continuation of the work or on retirement. See *Lewis*, 540 So.2d at 495; *Guillot*, 34,469 at p. 4, 781 So.2d at 868. It is good cause connected with employment for an employee to quit his job when the work becomes unsuitable due to unanticipated working conditions. *Lewis*, 540 So.2d at 495. However, mere dissatisfaction with working conditions does not constitute good cause unless the dissatisfaction is based on discrimination, unfair or arbitrary treatment, or is based upon a substantial change in wages or working conditions from those in force at the time the claimant's position began. *Id.*; *Guillot*, 34,469 at p. 8, 781 So.2d at 870.

[5] In *King v. Dep't of Transp. & Dev.*, 607 So. 2d 789, 791–92 (La. Ct. App. 1992), the First Circuit observed the effects that can result when a civil service employee refuses to accept assignments from an employee of higher rank:

While the majority offers hypothetical examples that could result from the KFD's interpretation of La. R.S. 33:2496, I think equal consideration should be given to potential scenarios where it becomes necessary, in the midst of disaster, to instantly promote one firefighter in the chain of command to fill the role of another who has become unable to work. What would happen to *any* organization's effectiveness when a member called upon to act refuses, continuing to work in that same department, without consequences, and determining which policies he will and will not follow? In my opinion, the majority ruling results in the diminished ability of the KFD to fully engage and operate in its mission, giving it less ability to manage itself than even the smallest Louisiana business. As noted by the Louisiana Supreme Court in *Newman v. Dep't of Fire*, 425 So.2d 753, 756 (La. 1983), "The public puts its trust in the fire department as a guardian of its safety, and it is important that the department be allowed to set appropriate standards of conduct for its employees sworn to uphold that trust."

For the foregoing reasons, I dissent from the majority opinion and would reverse the judgment of the trial court.

---

We have consistently held legal cause for disciplinary action against a permanent, classified civil service employee exists whenever that employee's conduct is detrimental to the efficient and orderly operation of the public service for which he is employed. *See Department of Public Safety and Corrections v. Piazza*, 588 So.2d 1218 (La. App. 1st Cir.1991), *writ denied*, 594 So.2d 1305 (La.1992); *Claverie v. L.S.U. Medical Center*, 553 So.2d 482 (La. App. 1st Cir.1989); *Hill v. Department of Health and Human Resources*, 457 So.2d 781 (La.App. 1st Cir.1984). Here, the Commission found appellant's insubordination impaired the efficient and orderly operation of the public service because he persistently refused to perform the duties for which he was paid. Likewise, appellant's conduct resulted in supervisory personnel having to set aside their own duties while dealing with appellant's refusal to accept assignments.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 4, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-342

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
LAURA C. RODRIGUE (APPELLEE)        BLAKE J. ARCURI (APPELLEE)        GUICE A. GIAMBRONE, III (APPELLANT)
ELICIA D. FORD (APPELLANT)          CRAIG R. WATSON (APPELLANT)

**MAILED**
NO ATTORNEYS WERE MAILED