442 So.2d 531 (1983)
Beatrice BUTLER
v.
CHARITY HOSPITAL OF NEW ORLEANS, DEPARTMENT OF HEALTH AND HUMAN RESOURCES.
No. 83-CA-0070.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*532 Mary E. Howell, Howell & Bayer, New Orleans, for appellant.
Phillip H. Kennedy, Staff Atty., Dept. of Health and Human Resources, New Orleans, for appellee.
Robert R. Boland, Jr., Civil Service Legal Counsel, Dept. of State Civil Service, Baton Rouge, for Herbert L. Sumrall, Director, Dept. of State Civil Service.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
Appellant, Beatrice Butler, appeals a State Civil Service Commission ruling dismissing as untimely her appeal for back pay allegedly owed her for the performance of duties as an Account Clerk II when she was classified only as a Typist Clerk II (later promoted to Typist Clerk III), a lower *533 paying position with fewer duties. We affirm.
Butler was informed on May 15, 1981, by a letter from Charity Hospital of New Orleans, hereinafter Charity, that she had been performing the duties of an Account Clerk II since October of 1979 and would thereafter be restricted to the duties consistent with her job classification as a Typist Clerk II.
On June 15, 1981, Butler through counsel filed a notice of appeal postmarked June 12, 1981, with the Director of the Civil Service Commission, hereinafter CSC, in accordance with Civil Service Rule 13.12(a), seeking as relief back pay and other benefits allegedly due her for the 18 months she worked as an Account Clerk II.
On March 26, 1982, a public hearing was held before a referee appointed by the CSC. At the hearing, counsel for Charity filed a motion for summary disposition of the appeal. The gravamen of Charity's motion was that plaintiff had failed to appeal within the delays provided for in Civil Service Rule 13.12(a)(2). The referee heard appellant's testimony on the motion, but without making a ruling proceeded with the presentation of evidence on the merits.
On October 8, 1982, the CSC rendered its decision granting Charity's motion. After reviewing the record furnished to it by the referee, the CSC made the following findings of fact, undisputed in this appeal.
Appellant was hired as a Typist Clerk II by Charity in October of 1979 and was assigned to the Accounts Receivable Department where she worked with three co-employees classified as Account Clerks II. According to the job descriptions she herself preparedone when she was first hired, another in April of 1980, and a third at some later dateshe was to perform duties strictly associated with desk work, such as typing and correspondence. However, her actual duties consisted of basic collection work relating to patients' accounts, the same duties performed by her three co-employees.
In a staff meeting held in June of 1980 which she attended, her then-supervisor Ed Anderson announced plans for reorganizing the office and promoting all Typist Clerks II in the office to positions of Account Clerks II.
In February of 1981, a Mr. Connelly circulated a notice of positions available at Charity and appeared at a staff meeting, which Butler also attended, to discuss promotional opportunities and testing requirements for qualifying for promotion, as provided in the Civil Service Rules.[1]
In March, 1981, replacing Ed Anderson, Ms. Joyce Morgan was hired by Charity as an Accounts Administrator II and assigned to a task force to reorganize the office and allocate positions according to their proper Civil Service job descriptions. After initial reorganization was completed some time in April of 1981, appellant's actual duties were restricted to those consistent with her job classification as a Typist Clerk II. She was given written notice of such restrictions by the letter dated May 15, 1981. At some undisclosed point during this period, appellant apparently tested or otherwise qualified for promotion, for in September of 1981 she was promoted to the position of Account Clerk II, effective January 15, 1982.
In April of 1981, appellant contacted a union representative to discuss her job situation. She was told that she had an appealable case and could file with the CSC. In hopes of a forthcoming motion, she decided to wait before taking any action. After *534 receipt of the May 15 letter formally notifying her of her newly restricted duties, appellant decided to appeal to the CSC.
The single issue before us is whether appellant's appeal to the CSC was timely or not.
Civil Service Rule 13.12 provides the delay period for all appeals to the CSC. Under that rule, a notice of appeal complying with the provisions of Rule 13.11 must be postmarked and received in the Office of the Director of the CSC, or addressed to him,
1. Within thirty (30) calendar days after the date on which appellant received written notice of the action on which the appeal is based when written notice before or after the action is required by these Rules; or
2. Within thirty (30) calendar days after the date when appellant learned or was aware that the action complained of had occurred when no written notice is required by these Rules or, if required, was given tardily or not at all.
The CSC found that appellant had learned of or was made aware of the action complained of on at least three separate occasionsin June of 1980 at the staff meeting with Ed Anderson, in February of 1981 when Mr. Connelly circulated the letter concerning available positions at Charity, and in April of 1981 when appellant consulted with her union representative who told her she had an appealable case. None of these findings are disputed in the present appeal.
Appellant, however, urges three reasons why the appeal delay did not commence to run until May 15, 1981, the date of the letter informing her of her newly restricted duties.
First, appellant, citing Pailet v. Office of Health Services, Etc., 387 So.2d 1274 (La. App. 1st Cir.1980), argues that casually acquired information and informal conversation with a union representative do not constitute sufficient "notice" under due process to begin appeal delays.
Unlike the present case, Pailet construed Rule 13.12(a)(1), providing for the commencement of appeal delays from the date required written notice is received, in light of the notice provisions in Rule 12.2, which contain the procedures for suspensions without pay. According to Rule 12.2, after a suspended employee is so notified on or before the effective date of his suspension, the appointing authority must also furnish him with detailed reasons for the suspension within 15 days of its effective date. Reasoning that the purpose of provisions requiring reasons to be given an adversely affected employee is to afford him due process so that he might know with reasonable particularity the facts and circumstances he may be called upon to rebut on appeal, we held that the appeal delay for suspension commences to run on the date appellant receives the detailed written reasons for his suspension, rather than on the date he is notified of the suspension.
Thus, Pailet's holding is limited to a specific situation under the rules where written notice must be given an employee adversely affected by the actions of the appointing authority. Since not all appealable cases under the Rules involve adverse actions requiring such written notice,[2]Pailet does not support the proposition that due process requires written notice in every appealable case before appeal delays commence to run. To read Pailet otherwise would be to completely invalidate the provisions of Rule 13.12(a)(2).
We said in Legros v. Dept. of Public Safety, Etc., 364 So.2d 162 (La.App. 1st Cir.1978), writ refused, 366 So.2d 562 (La. 1979), that the CSC is a quasi-judicial body, *535 and so long as its rules are reasonable and do not violate basic constitutional rights, they must be recognized and enforced by the courts.
The obvious purpose of Rule 13.12 is to provide a time limit on the right to appeal. Consistent with the purpose stated in Pailet of affording an adversely affected employee due process in preparing his appeal, a 30-day delay period commences on the date the employee receives written notice when the Rules require written notice be given. However, due process does not give an employee an interminable length of time in which to appeal. It is not unreasonable to require an employee to appeal within 30 days of the date he receives actual knowledge of some adverse action by the appointing authority or of some violation of the Rules giving rise to an appeal, whether written notice is received or not required to be given at all.
Since the action complained of in the present case is not one for which written notice is required under the Rules,[3] the delay period for appellant's appeal began on the date when she actually learned of the alleged violation and of her right to appeal. The undisputed facts place this at the latest some time in April of 1981, when she spoke with her union representative. Therefore, her notice, filed on June 12, 1981, was untimely.
Second, appellant argues that the CSC should have applied the equitable doctrine contra non valentem agere praescriptio non currit lex as an exception to the 30-day delay period contained in Rule 13.12.
According to Nathan v. Carter, 372 So.2d 560, 562 (La.1979),
[t]his equitable doctrine has been applied to cases wherein defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation, or other "ill practices") which tend to hinder, impede, or prevent plaintiff from asserting his cause of action, as long as plaintiff's delay in bringing suit is not willful or the result of his own negligence. (Citations omitted.)
Without deciding whether this doctrine is a viable exception to Civil Service Rule 13.12, we find nothing in the record supporting appellant's allegation that Charity willfully mislead, hindered or in any way impeded appellant from exercising her right of appeal.
Finally, appellant argues that because the action complained of was a "continuing" violation of the CSC Rules, the appeal delays did not commence running until the date of the last harmful act, namely, May 15, 1981.
In support of this argument, appellant cites various decisions which hold that "[w]here the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage." South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531, 533 (La.1982); accord., Wilson v. Hartzman, 373 So.2d 204 (La.App. 4th Cir.1979); Parro v. Fifteen Oil Co., 26 So.2d 30 (La.App. 1st Cir.1946).
All of the cases relied on by appellant involved a judicial construction of Civil Code Article 3537 (the prescription statute for offenses and quasi-offenses) in connection with the concept of a "continuing tort."
The situation before us involves neither a continuing tort nor an interpretation of Civil Code Article 3537. In light of Legros, discussed above, we see no reason to extend this tort theory to Civil Service actions. See White v. Dept. of Health and Human Resources, 385 So.2d 400 (La.App. *536 1st Cir.), writ refused, 386 So.2d 358 (La. 1980).
For the reasons given, the judgment of the State Civil Service Commission is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Without detailing its baroque provisions, we note that the Civil Service Rules contain various requirements and procedures governing entrance to and promotion within the Classified Service. See Chapters 7 and 8 of the Civil Service Rules. Essentially, qualifications for any position are determined by the successful completion of an entrance or promotional examination and the attainment of a specific rating placing the applicant on an "eligible list" from which appointments to available positions may be made by the Director. Certain noncompetitive promotions are allowed at the Director's discretion, provided the employee is designated for promotion by his appointing authority and otherwise qualifies for the position to which he desires to be promoted. See Rule 7.8.
[2] For example, Rule 13.10(d) gives an employee a right to appeal an adverse allocation or reallocation of his position to another class if under Rule 5.3 he fails to obtain upon written request a reasonable review of his case by the Director because of discrimination. The Rules do not require written notice of the Director's refusal to review the adverse allocation. Thus, appeal delays commence to run under subsection two of Rule 13.12(a) rather than under subsection one.
[3] Appellant alleges Charity detailed her to a special duty for more than one month without approval of the Director in violation of Civil Service Rule 8.16(d). It is questionable whether a violation of this rule gives rise to an appealable case. Civil Service Rule 6.22 provides for a temporary increase in pay when an employee is detailed to a special duty, but only with the approval of the Director. An employee is not given a right to such increase. Whether a violation of Rule 8.16(d) gives rise to an appealable case, Rule 8.16(d) contains no written notice provisions in any event.