597 So.2d 38 (1992)
Joyce B. PUGH
v.
DEPARTMENT OF CULTURE, RECREATION AND TOURISM,[1] SABINE RIVER AUTHORITY.
No. CA 90 2238.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
*39 Tony C. Tillman, Tillman and Anderson, Leesville, for appellant.
Mark E. Falcon, Avant and Falcon, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civil Service General Counsel, Dept. of State Civil Service, Baton Rouge, for Herbert L. Sumrall Director, Dept. of State Civil Service.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
COVINGTON, Chief Judge.
A former employee of the Sabine River Authority appeals the summary dismissal of her appeal as untimely by a Civil Service Commission referee. Appellant had been employed by the Department of Culture, Recreation and Tourism, Sabine River Authority, as a Park Building and Grounds Attendant with permanent status from March, 1988, to May 5, 1989. On the latter date, she signed a resignation form in blank, which was later completed by the appointing authority, to indicate that she resigned to avoid disciplinary action. She appealed to the Civil Service Commission approximately ten months later by certified mail, which was postmarked March 16, 1990. Although her appeal was docketed for a hearing before the appeals referee, that hearing was limited to whether the appeal was timely under Civil Service Rule 13.12. The referee ruled that it was not, and summarily dismissed the appeal, stating that "the Commission and its Referee are without jurisdiction to consider the merits of this appeal."
For the reasons hereinafter stated, we affirm appellant's dismissal.
It is undisputed that on May 5, 1989, William G. Kratz, then Executive Director of the Sabine River Authority, went to Joyce Pugh's worksite to talk with her about allegations he had received that she had changed documents and mismanaged funds. Mr. Kratz testified at the hearing that after talking to five of appellant's co-workers, he determined that it would be advantageous for him to go to her worksite, secure the documents and funds in question, and then talk to Ms. Pugh. He testified that she denied doing anything after he told her why he was there, but that when he told her he would either have to begin an investigation or that he would give her the opportunity to resign, she agreed to resign.
Appellant contends that she was never specifically told what she was accused of, but that Mr. Katz told her she would either have to sign a resignation form or go to jail. She testified that because she was alone at the time at her worksite with Mr. Katz and one other man who had accompanied him, she was afraid not to sign the resignation form, which was blank except for her name. She also stated that she did not receive a copy of the form until October, when she wrote to the Civil Service Commission and requested any information it had on her employment and leaving the Sabine River Authority; nor was she given any information about her right to appeal. Ms. Pugh testified that she first learned that she could appeal to the Civil Service Commission in October, when her husband had a conversation with her former immediate supervisor, a Mr. Ed Brown, who had retired. She had no explanation for not calling the Sabine River Authority or anyone else prior to October, 1989, to inquire about her rights.
The appointing authority does not dispute appellant's contention that she was not given a copy of her resignation form at the time she signed it. Mr. Katz testified at the hearing that the remainder of the form, namely, the section for agency comments, was completed back at the office. The comments added were, "Employee did not check reason for resignation. Employee resigned to avoid disciplinary action." Nor does the appointing authority dispute that Ms. Pugh was not told anything about appealing when she resigned. Rather, it argues on appeal that it was under no obligation to give her notice of appeal rights when she voluntarily resigned.
*40 Appellant contends that her resignation was not voluntary, but coerced, and thus, that she was "removed" from her position; therefore, she argues, the appointing authority was obligated to comply with Civil Service Rule 12.3, which requires that the employer furnish detailed written reasons for the employee's removal, as well as notice of appeal rights.
Rule 12.3 provides as follows:
(a) In every case of removal, demotion, or reduction in pay for cause of a permanent employee, the appointing authority or his authorized agent shall:
1. Furnish to the employee at the time such action is taken, or prior thereto, a statement in writing giving detailed reasons for such action.
2. In such cases, the appointing authority or his duly authorized agent shall, commencing January 1, 1978, include in the written notice the following provision: "You may appeal this action to the Civil Service Commission within 30 days. The appeal must conform to the provisions of Chapter 13 of the Civil Service Rules."
3. The appointing authority shall furnish the Director a copy of such statement within fifteen calendar days of the date the employee is notified.
(b) A written statement to which reference is made in the preceding paragraph shall be deemed furnished to the employee
1. Upon actual receipt by, or manual delivery to, the employee or to any resident of suitable age and discretion of the employee's domicile, or
2. On the seventh day subsequent to the day on which an appointing authority establishes that it was deposited in the United States Mail, with proper postage affixed, and addressed to the employee at his last known address as furnished to the appointing authority at the time of employment, or as changed by the employee in writing.
(c) For purposes of this Rule, "detailed reasons" shall include at least a description of the misconduct for which the disciplinary action is being levied, the date, time and place of such misconduct, the names of persons directly involved in or directly affected by the misconduct (unless their identities are protected by state or federal statute or regulation, in which case, identification shall be made as permitted by such statute or regulation) and such other information as will fully inform the employee of the charge against him and will enable him to prepare a defense.
The appointing authority contends that this rule is inapplicable in this instance because Ms. Pugh was not removed, but voluntarily resigned to avoid disciplinary action. It cites Civil Service Rule 1.37, which defines removal as "the termination of an employee for cause," in support of its argument. It further argues that the applicable rule is that which the referee relied upon, Rule 13.12(a), which provides a thirty-day delay for appealing. This rule reads, in pertinent part:
No appeal shall be effective unless a written notice complying with the requirements of Rule 13.11 is either (i) received in the office of the Director of the State Department of Civil Service at Baton Rouge, Louisiana, or (ii) is addressed to the Director of the State Department of Civil Service at Baton Rouge, Louisiana, with proper postage affixed, and is dated by the United States Post Office[.][sic]
1. Within thirty (30) calendar days after the date on which appellant received written notice of the action on which the appeal is based when written notice before or after the action is required by these Rules; or
2. Within thirty (30) calendar days after the date when appellant learned or was aware that the action complained of had occurred when no written notice is required by these Rules or, if required, was given tardily or not at all.
The Sabine River Authority argues that written notice is required only in cases of suspensions, removal, demotions, or reductions in pay under Rules 12.1 through 12.3; *41 no notice is required in the case of a voluntary resignation, which it claims this was, because there is no right to appeal a voluntary resignation. However, if Ms. Pugh wished to challenge her resignation as involuntary or coerced, she had thirty days in which to file her appeal, which began to run on the day after appellant signed the resignation form, or "when appellant learned or was aware that the action complained of had occurred ..." pursuant to Rule 13.12(a) 2. The appointing authority further argues that the date on which she became aware of appeal rights is immaterial, because the operative fact which triggers the thirty-day appeal period applicable to Ms. Pugh is "knowledge that the action complained of occurred, rather than knowledge that the action can be challenged through appeal."
We agree with the arguments of the appointing authority. Ms. Pugh's resignation to avoid possible disciplinary action is not the same as a removal under Rule 12.3. This conclusion is supported by the fact that the rule entitled "Voluntary Resignations," Rule 12.8, contains a sub-part (f) which reads:
When an employee submits a resignation his appointing authority shall, if such is the case, indicate on the personnel action form reporting the transaction that the employee submitted his resignation to escape possible disciplinary action, and a copy of said personnel action form shall be given the affected employee.
Inclusion of the identical situation with which we are purportedly presented here, a resignation to avoid possible disciplinary action, under the rule which pertains to voluntary resignations, rather than the rule which deals with involuntary terminations, clearly categorizes appellant's action as a voluntary resignation. If appellant voluntarily resigned, then she has no right of appeal. Carpenter v. Confederate Memorial Medical Center, 250 So.2d 161 (La. App. 1st Cir.1971).
It is undisputed that Ms. Pugh was not given a copy of her resignation form, with its notation that she resigned to avoid disciplinary action, as required by Rule 12.8(f), until after her request in October of 1989 for information about her termination to the Civil Service Commission. We are unaware of any prior cases in our law addressing the significance of such an omission by the appointing authority. We perceive no prejudice to Ms. Pugh under the circumstances of this case. The form in question contains nothing regarding appeal rights or delays, which appear to be the focus of one of appellant's arguments, nor any other information which would have been essential to the preservation of any right to appeal. Moreover, Rule 12.8(a) provides:
Whenever the services of a permanent or probationary employee are terminated by voluntary resignation, the appointing authority shall request that the employee submit a letter of resignation or complete other appropriate agency forms. Where it is impossible to secure the letter or form, the appointing authority shall prepare and maintain a written explanation of the reason(s), if known, and why the letter or form was not obtained.

[Emphasis added.]
Obviously, this rule contemplates instances in which the employee does not complete the forms or receive a copy of any form completed by the appointing authority. While there is no contention that it would have been impossible for the forms to have been completed in this instance or for copies to have been given to appellant, we must conclude that the validity of the resignation is not affected by this omission, under the wording of this rule.[2]
*42 Appellant cites the case of Duczer v. State Banking Department, 277 So.2d 453 (La.App. 1st Cir.1973), as authority for the proposition that if a Civil Service employee voluntarily resigned, he has no right of appeal, but if he is forced to submit his resignation without cause, he does have a right of appeal. Appellant is correct in her reading of Duczer, but incorrect in her reliance on Duczer in this instance. This court in Duczer was concerned with the fact that there had never been a hearing or factual determination of whether the employee there had voluntarily resigned, unlike the present situation; nor had the employee waited nearly ten months to appeal, as in the case sub judice.
In the instant case, as part of her determinations, after listening to the testimony of both Ms. Pugh and Mr. Kratz, the referee found as a fact the following:
Mr. Kratz gave appellant the option to resign or to be suspended, pending an investigation of the allegations against her. Appellant agreed to resign and signed a resignation form on May 5, 1989.
Thus, there is a specific factual finding before us, based on a credibility determination made by the referee after a hearing at which she observed the demeanor of both witnesses. Such was not the case in Duczer, wherein the appeal was summarily dismissed without any type of hearing. We cannot say that the referee was manifestly erroneous in this factual finding, which is entitled to the same deference accorded to factual findings of a judge or jury, and we decline to disturb it. See, Claverie v. L.S.U. Medical Center in New Orleans, 553 So.2d 482 (La.App. 1st Cir.1989).
Finally, we address appellant's contention that under Butler v. Charity Hospital of New Orleans, Department of Health and Human Resources, 442 So.2d 531 (La.App. 1st Cir.1983), this court has held that appeal delays do not start until the employee is aware of her right to appeal. Appellant is in error. In Butler we upheld the dismissal of an employee's appeal as untimely under Rule 13.12(a) 2 because it was not filed within thirty days of an adverse action by the appointing authority. This court stated,
Thus, Pailet's [Pailet v. Office of Health Services, etc., 387 So.2d 1274 (La. App. 1st Cir.1980)] holding is limited to a specific situation under the rules where written notice must be given an employee adversely affected by the actions of the appointing authority. Since not all appealable cases under the Rules involve adverse actions requiring such written notice, Pailet does not support the proposition that due process requires written notice in every appealable case before appeal delays commence to run. To read Pailet otherwise would be to completely invalidate the provisions of Rule 13.12(a)(2).
. . . . .
It is not unreasonable to require an employee to appeal within 30 days of the date he receives actual knowledge of some adverse action by the appointing authority or of some violation of the Rules giving rise to an appeal, whether written notice is received or not required to be given at all.
. . . . .
... we find nothing in the record supporting appellant's allegation that Charity willfully mislead, hindered or in any way impeded appellant from exercising her right of appeal.
[Footnotes deleted.]
442 So.2d at 534-535.
Since Ms. Pugh voluntarily resigned in order to avoid possible disciplinary action, *43 then elected to contest the voluntariness of her action, we hold that she had thirty days under Rule 13.12(a) 2 within which to file her appeal, that is, thirty days from the date of her resignation, to do so. The decision of the appeals referee summarily dismissing her appeal is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Ms. Pugh's appeal was docketed as against the Department of Culture, Recreation and Tourism, Sabine River Authority; however, the briefs of both parties and the record cover list the Department of Transportation and Development as the appellee. There is no explanation of this discrepancy within the record, nor are we aware of any, and will therefore treat the Department of Culture, Recreation and Tourism, Sabine River Authority, as the proper appointing authority.
[2] We are aware of Day v. Department of Institutions, 228 La. 105, 81 So.2d 826 (1955), which held that an employee's alleged oral resignation and removal from the payroll must be accepted by the appointing authority in writing, and that notice of that removal (not of appeal delays) must be conveyed in writing to the employee before the appropriate appeal delay could begin. However, the Day case, decided under a different rule, is inapposite to the present case for several reasons. First, the employee in Day was already absent from the job and payroll, having been on leave without pay for at least two months prior to her alleged oral resignation. In view of the conflict in testimony regarding whether her termination was voluntary or whether she was even aware that she had been removed from the payroll, the issue of notice was central to that case, unlike the present one. Here, appellant's resignation was written, rather than oral; she certainly knew she had signed a resignation form, and was aware that she had been removed from the payroll, unlike Ms. Day. Finally, even if we were to accept appellant's contention that she was removed and did not voluntarily resign, she received written notice that she was no longer on the payroll when she wrote to the Commission in October of 1989 and requested copies of the information in its files on her termination. Therefore, her appeal filed in March still would not be timely.